In re Albert Charles MOSS, Jr. and Joan Marilyn Moss, Debtors.

Bankruptcy No. ST91–85696.

United States Bankruptcy Court, W.D. Michigan, N.D.

July 23, 1992.

James W. Boyd, of Traverse City, Mich., Trustee.

Stowe, Darling & Buday (A. Brooks Darling, argued) Traverse City, Mich., for the debtors.

## OPINION DISALLOWING EXEMPTION OF INDIVIDUAL RETIREMENT ANNUITIES

JO ANN C. STEVENSON, Bankruptcy Judge.

This opinion embodies in written form the bench decision rendered on June 18, 1992, and for the reasons stated herein the Trustee's objection is granted.

The threshold issue in this case is whether the Debtors may exempt their interest in two individual retirement annuities under 11 U.S.C. § 522(d)(10)(E). This passage describes as exempt:

> a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor....

Certain exceptions follow not relevant to this case.

An individual retirement annuity is a variant on the individual retirement account theme. An individual retirement account allows an individual to shelter current earnings from taxation by placing them in a designated account. The deposited amounts may only be withdrawn subject to a substantial penalty until the holder reaches retirement age. Upon reaching that age the amounts on deposit are paid out over time and are taxed as income at the rate to which the holder is then subject.

The individual retirement annuity functions similarly to the individual retirement

account for the most part. The main distinction is that when the holder reaches the designated age, instead of receiving payments from the amount on deposit the proceeds are used to purchase a single premium annuity. The advantage of this arrangement for the holder of the account is security: he or she is guaranteed an income stream for life, regardless of the amount paid into the individual retirement annuity.

In this case the Debtors both hold individual retirement annuities issued by Transamerica, by whom Mr. Moss is employed as an insurance salesman. These accounts were originally held elsewhere by the debtors as individual retirement accounts. However, in July, 1991 the Debtors "rolled over" their two accounts into the two investments at issue here. According to the Debtors, Mrs. Moss had $17,-783.62 in her account and Mr. Moss had $17,455.30 in his account as of the end of July, 1991. The Trustee, James W. Boyd, does not dispute these figures.

The Debtors filed bankruptcy under Chapter 7 on October 24, 1991 and elected the exemptions provided under § 522(b)(2), that is, state law exemptions. Michigan law expressly exempts individual retirement accounts. *See* MICH.COMP.LAWS ANN. § 600.6023(1)(k). However, the Debtors subsequently filed an amended Schedule C thereby electing the federal exemptions provided under § 522(b)(1) and scheduling these accounts as exempt under § 522(d)(10)(E). Trustee Boyd objected to the amended exemption.

■ In support of their exemption the Debtors cite *In re Cilek*, 115 B.R. 974 (Bankr.W.D.Wis.1990) which held that individual retirement annuities are exempt under § 522(d)(10)(E). The *Cilek* court initially found individual retirement annuities to be the functional equivalent of individual retirement accounts for purposes of § 522(d)(10)(E):

In the present case the court sees no significant difference between individual retirement accounts and individual retirement annuities. Accordingly, the Court will refer to both individual retirement

accounts and individual retirement annuities as IRAs.

115 B.R. at 976, fn. 1. In this aspect we agree with the *Cilek* opinion. The fact that this account may one day be converted into an annuity does not render it an annuity at the present time. We may not simply conclude that an individual retirement annuity is an annuity and therefore exempt. It, like an individual retirement account, must be examined as a "similar plan or contract." As did *Cilek*, this Court will refer to both of these investment vehicles as IRAs.

■ At this point, however, our paths diverge. The court in *Cilek* concluded that an IRA is a "similar plan or contract" as that term is used in § 522(d)(10)(E) which otherwise meets the requirements of that section and therefore is exempt. In reaching this conclusion Judge Utschig undertook a phrase by phrase analysis of the statute. Interpreting the phrase "under a stock bonus, pension, profitsharing, annuity, or similar plan" Judge Utschig undertook a lengthy discussion of the issue of "control," reporting that courts have considered the debtor's ability to control the fund as bearing on its exemption. The court then concluded that the issue of control once was relevant under the former Bankruptcy Act in determining whether the fund was property of the estate, but was no longer an issue raised in the list of exempt plans in § 522(d)(10)(E).

The court next moved to the phrase, "on account of illness, disability, death, age, or length of service," but in its discussion failed to address the issue of control. Control, however, is a key issue in this context. This Court views the list set forth in this phrase as exhaustive of the conditions under which payments may be made out of an account if it is to be exempt under § 522(d)(10)(E). By negative implication an investment which the debtor has control over does not meet the requirements of this phrase and cannot be exempt. Thus the issue of control has arisen in other cases to determine whether the payments in question are truly "on account of illness, disability, death, age, or length of service," or are

available to the debtor on demand. *See In re Pauquette,* 38 B.R. 170, 173–74 (Bankr. D.Vt.1984), *In re Pettit,* 61 B.R. 341, 348 (Bankr.W.D.Wash.1986), *Nelson v. White (In re White),* 61 B.R. 388, 395 (Bankr. W.D.Wash.1986); *see also In re Bell,* 119 B.R. 783, 784–85 (Bankr.D.Mont.1988), *In re Montavon,* 52 B.R. 99, 102 (Bankr. D.Minn.1985).[1]

There is no question that IRAs fall into the latter category. The Debtors admit that they may obtain access to the funds. Even though significant penalties may attach to cashing out the IRAs, the Debtors are not prohibited from doing so. This right of control is significant. The Court notes that this case was filed as a no-asset Chapter 7 and assumes that the values of the IRAs and the total unsecured debt stated in Debtor's statement of facts are accurate. If it is further assumed that a 50% penalty would attach if the IRAs were cashed today, the Debtors would have an ability to presently realize over $17,000 while their creditors receive nothing. This same amount would enable the Debtors to pay roughly 20% of their unsecured debt, less administrative expenses.

We are not unmindful that the exemption provisions of the Bankruptcy Code are to be construed liberally and that the protections of future earnings found in § 522(d)(10)(E) should also extend to the self-employed. However, there were avenues the Debtors could have chosen which would have permitted them to shelter the funds at issue here. As noted in Debtors' brief, Mr. Moss is currently employed as an agent of Transamerica, the same corporation that issued these IRAs. These investments provide for the future purchase of an annuity which itself would clearly fall within the ambit of the statute. The Debtors could have purchased a similar annuity when they rolled over their accounts, but chose this option instead. Presumably one

reason for their choice is that they retained a greater degree of control over the funds invested through the IRA. The Court attaches no significance to the Debtors' statements that they will not exercise this control but will wait until retirement age to draw upon the funds. It is inconceivable that a debtor in bankruptcy, no matter how well-intentioned, faced with the choice of turning IRA funds over to creditors or delaying access to the funds until retirement would acknowledge that if exempted they would promptly liquidate the IRA. Another option Debtors initially pursued but later rejected was to select state law exemptions which explicitly exempt IRAs. Either of these choices would have permitted the Debtors to put these funds beyond the Trustee's reach.

The only significant difference between this investment and a bank savings account held by the Debtors for the purpose of purchasing an annuity at retirement age is the election the Debtors have made for tax purposes to treat this investment as an IRA. As stated by Judge Howard in *In re Rector,* 134 B.R. 611, 616 (Bankr. W.D.Mi.1991), resolving whether an investment is exempt under § 522(d)(10)(E) "boils down to determine whether the ... plan was established to provide payment to the participant[ ] in the event of occurrences sanctioned under § 522(d)(10)(E) or whether the plan is, like the Trustee argues, merely a savings device, or income tax shelter." Here the only feature that differentiates this investment from unsegregated cash on hand is the tax treatment. Accordingly, the exemption is disallowed.

---

1. A number of courts have held that IRA benefits are exempt so long as the debtor has a *present right to payment. See Velis v. Kardanis,* 949 F.2d 78 (3rd Cir.1991), *In re Clark,* 711 F.2d 21 (3rd Cir.1983), *In re Chick,* 135 B.R. 201, 203 (Bankr.D.Conn.1991). We do not address this issue because it is not presented in the facts before the Court except to say that the Court

views its holding as entirely consistent with these cases. Even though the IRAs at issue here are not exempt now, it is quite possible that (depending upon the status of future debtors) at the time of maturity the proceeds of a similar investment in another case might well be exempt.