## In re Daniel N. ZOTT and Jean R. Zott, Debtors.

### Bankruptcy No. 97–51598–S.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Feb. 6, 1998.

Mark K. Schrupp, Miller, Canfield, Paddock and Stone, P.L.C., Detroit, MI, for Republic Bank.

Kevin M. Smith, Francis G. Seyferth & Associates, P.C., Troy, MI, for Debtors.

## MEMORANDUM OPINION

WALTER SHAPERO, Bankruptcy Judge.

This matter comes before the Court on Creditor, Republic Bank's, objection to Debtors, Daniel N. Zott and Jean R. Zott's, claims of exemption as to monies held in their respective Individual Retirement Accounts (IRAs). The Court SUSTAINS Creditor's objection to the extent that the Court finds that funds held in Debtors' IRAs are property of Debtors' bankruptcy estate under 11 U.S.C. § 541, and not exempt under 11 U.S.C. § 522(d)(10)(E). In addition, the Court SUSTAINS Creditor's objection that, although funds held in Debtors' IRAs are exemptible under 11 U.S.C. § 522(d)(5), the amount exempt cannot exceed $16,600.

### Statement of Facts

The parties have stipulated to the following facts. Debtors filed for Chapter 7 relief and listed on Schedule B of their bankruptcy schedules their respective interests in two IRA accounts: an account valued at $11,162.71 in Daniel Zott's name, and an account valued at $10,441.16 in Jean Zott's name.

However, Debtors claimed that the monies held in their IRA accounts were not considered property of the bankruptcy estate under 11 U.S.C. § 541(c)(2), or, in the alternative, were exempt pursuant to 11 U.S.C. § 522(d)(10)(E). Debtors further claimed that the funds, if considered property of the estate, were partially exempt under 11 U.S.C. § 522(d)(5). Debtors' IRAs qualify under 26 U.S.C. § 408 of the Internal Revenue Code, and Debtors have a present right to receive payment from the IRAs subject to a 10% penalty for early withdrawal. Debtors exercised their right to present payment (subject to the 10% penalty) by withdrawing a total of $17,000 from their IRAs during the two years prior to filing their Chapter 7 petition.

On August 25, 1997, Creditor filed an objection to Debtors' exemptions regarding the IRAs. Creditor based its objection on three grounds: (1) that IRAs are not excluded from property of the bankruptcy estate under § 541(c)(2); (2) that the exemption provided under § 522(d)(10)(E) does not apply to Debtors' IRAs; and (3) that Debtors cannot claim as exempt an amount exceeding $16,600 under § 522(d)(5). A hearing was held on October 24, 1997, regarding Creditor's objections, where the Court heard oral arguments, ordered that each party submit briefs on the legal issues presented, and took the matter under advisement. The Court has considered the parties' oral arguments and written briefs in rendering this decision.

### Arguments and Analysis

*Application of 11 U.S.C. § 541(c)(2)*

Debtors claim that their interest in the IRAs should be excluded from property of their bankruptcy estate under § 541(c)(2) because applicable nonbankruptcy law places a restriction on the transfer of these funds. Specifically, Debtors argue that because Mich.Comp.Laws Ann. § 600.6023(1)(k) (West Supp.1997) places an enforceable restriction on the transfer of IRA funds, and because Debtors' interest in the IRAs are held in a trust account, the funds held in the IRAs are excluded under § 541(c)(2).

§ 600.6023(1)(k) provides in relevant part:

(1) The following property of the debtor and the debtor's dependents shall be ex-

empt from levy and sale under any execution:

.　.　.　.　.

(k) An individual retirement account or individual retirement annuity as defined in section 408 of the internal revenue code and the payments or distributions from such an account or annuity. This exemption applies to the operation of the federal bankruptcy code as permitted by section 522(b)(2) of title 11 of the United States code, 11 U.S.C. 522.

Mich.Comp.Laws Ann. § 600.6023(1)(k) (West Supp.1997). This section expressly exempts IRAs when a debtor in this state elects the exemptions provided under 11 U.S.C. § 522(b). *See In re Moss*, 143 B.R. 465, 467 (Bankr.W.D.Mich.1992).[1]

▮▮▮ Under 11 U.S.C. § 541(a)(1), a debtor's bankruptcy estate generally consists of all of the debtor's legal and equitable interests in property at the time of filing. The scope of § 541(a)(1) is quite broad, and includes all of the debtor's tangible and intangible property, as well as causes of action. *Demczyk v. Mutual Life Ins. Co. of N.Y. (In re Graham Square, Inc.)*, 126 F.3d 823, 831 (6th Cir.1997). However, under § 541(c)(2)[2], a debtor may exclude from property of the bankruptcy estate any interest in a trust that contains a transfer restriction enforceable under applicable nonbankruptcy law. *Patterson v. Shumate*, 504 U.S. 753, 758, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). The application of § 541(c)(2) to a trust requires a three-step inquiry. *In re Dunn*, 215 B.R. 121, 124–25 (Bankr.E.D.Mich.1997) (citing *Shumate*, 504 U.S. at 758, 112 S.Ct. 2242). First, whether the debtor's interest is a beneficial interest held in a "trust"; second, whether there is a restriction on the transfer of the debtor's beneficial interest; and third,

whether that restriction is enforceable under applicable federal or state nonbankruptcy law. *Dunn*, 215 B.R. 121, 124–25.

Here, Creditor does not contest whether Debtors' beneficial interests in the IRAs are held in trust.[3] However, Creditor argues that the second and third steps of the three-step test cannot be satisfied. Specifically, Creditor argues that the second step is not satisfied because the language of the IRAs themselves does not provide for a restriction upon alienation; because the restriction alleged by Debtor (Mich.Comp.Laws Ann. § 600.6023(1)(k)) only restricts creditors from levying against a debtor's IRA, but does not restrict a debtor's ability to access the funds; and because the restriction provided in Mich.Comp.Laws Ann. § 600.6023(1)(k) pertains to a debtor's choice of state exemptions under § 522(b) in bankruptcy, and therefore cannot be considered relevant nonbankruptcy law for purposes of satisfying § 541(c)(2).

*a. Whether the Restriction on Transfer Must be Contained in the Plan Itself*

▮▮▮ In *Shumate*, the Supreme Court settled a dispute among the circuits and found that the phrase "applicable nonbankruptcy law," as used within § 541(c)(2), did not refer exclusively to state law, but extended to federal law such as the Employment Retirement Income Security Act of 1974 as ("ERISA")[4] as well. In doing so, the Court interpreted § 541(c)(2) and found that "[t]he natural reading of the provision entitles a debtor to exclude from property of the estate any interest in a plan or trust *that contains* a transfer restriction enforceable under any relevant nonbankruptcy law." *Shumate*, 504 U.S. at 758, 112 S.Ct. 2242 (emphasis added).

---

1. As discussed in the next sections, Debtors in this case have elected the federal exemptions provided under § 522(d). 11 U.S.C. § 522 allows a debtor to choose between federal exemptions listed in subsection (d), or any exemptions allowed under state, local and federal nonbankruptcy law. However, a debtor must choose between the two and may not select exemptions from both sections. 11 U.S.C. § 522(b)(2)(A); *Orr v. Yuhas (In re Yuhas)*, 104 F.3d 612, 615 n. 2 (3d Cir.1997).

2. 11 U.S.C. § 541(c)(2) provides that: "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title."

3. Furthermore, 26 U.S.C.A. § 408(a) (West Supp. 1997) defines the term "individual retirement account" as a "trust."

4. 29 U.S.C. § 1001 *et seq.*

The *Shumate* Court went on to distinguish IRAs that qualify for preferential tax treatment under 26 U.S.C. § 408 from traditional pension plans and noted that IRAs are specifically excepted from ERISA's antialienation requirement. The Court concluded that, "[a]lthough a debtor's interest in these plans could not be excluded under § 541(c)(2) because the plans lack transfer restrictions enforceable under 'applicable nonbankruptcy law,' that interest nevertheless could be exempted under § 522(d)(10)(E)." *Shumate*, 504 U.S. at 763, 112 S.Ct. 2242 (footnote omitted). Therefore, based upon the Supreme Court's statements and reasoning in *Shumate*, this Court finds that a restriction on the transfer of funds held in trust must be contained in the language of the trust for purposes of satisfying § 541(c)(2).

This Court is not persuaded otherwise by *Meehan v. Wallace (In re Meehan)*, 102 F.3d 1209, 1211 (11th Cir.1997) (the case upon which Debtors rely), where the Eleventh Circuit concluded that "the § 541(c)(2) exclusion is not lost merely because the IRA document itself does not contain the restriction." In *Meehan*, the Chapter 7 Trustee objected to the Debtor's attempt to claim her interest in an IRA worth approximately $20,000 on the ground that the IRA was excluded from property of the estate pursuant to § 541(c)(2) by virtue of a state statute that prohibited garnishment of IRA funds, or, in the alternative, that the IRA was exempted from the estate. *Id.* at 368. The bankruptcy court sustained the Trustee's objection because, among other things, the IRA itself did not contain a restriction on transfer. *Wallace v. Meehan (In re Meehan)*, 162 B.R. 367, 370–71 (Bankr.S.D.Ga.1993). The Debtor appealed, and the District Court affirmed the Bankruptcy Court's decision and reasoning. *Meehan v. Wallace (In re Meehan)*, 173 B.R. 818, 821 (S.D.Ga.1994). In addressing "[t]he sole question ... [of] whether 11 U.S.C.A. § 541(c)(2) excludes from the property of a bankruptcy estate an IRA which is subject to a restriction on transfer by a state statute," on appeal, the Eleventh Circuit answered the question in the affirmative and reversed the lower courts' decisions. *Meehan*, 102 F.3d at 1210, 1213. The Court rejected the proposition that the transfer restriction must be contained in the trust itself, on the basis that the language of *Shumate*, when taken in context, does not support such a finding; that the plain meaning of the language of § 541(c)(2) requires only that the restriction be enforceable under nonbankruptcy law; that common sense dictates that a restriction is no less enforceable because it is located in the statute rather than in the trust itself; and that case law supported the conclusion that the transfer restriction need not be in the trust document. *Meehan*, 102 F.3d at 1211–12.

This Court disagrees with the Eleventh Circuit on all grounds. First, a careful reading of *Shumate* indicates that the Supreme Court was doing more than commenting on the fact that IRA documents typically would not contain transfer restrictions, as suggested by the Eleventh Circuit. Rather, when this section of the *Shumate* opinion is read in its entirety, it is clear that the Court was addressing the Petitioner's argument that the Court's "construction of § 541(c)(2), pursuant to which a debtor may exclude his interest in an ERISA-qualified pension plan from the bankruptcy estate, renders § 522(d)(10)(E) of the Bankruptcy Code superfluous." *Shumate*, 504 U.S. at 762–63, 112 S.Ct. 2242. The Court rejected the Petitioner's argument on the basis that § 522(d)(10)(E) exempts from the bankruptcy estate a much broader category of interests than § 541(c)(2) excludes. *Id.* The *Shumate* Court then, by way of example for this proposition, specifically noted that a debtor's interest in an IRA, which qualifies for preferential tax treatment under 26 U.S.C. § 408, could not be excluded from property of the bankruptcy estate under § 541(c)(2) because IRAs lack transfer restrictions enforceable under nonbankruptcy law, but that the debtor's interest may be exempt under § 522(d)(10)(E). *Id.* Accordingly, the *Shumate* Court was doing more than "commenting on the fact that IRA documents typically would not contain transfer restrictions," as suggested by *Meehan*. *Meehan*, 102 F.3d at 1211. It was indicating what were the consequences of the lack of such a restriction; namely, that a debtor's interest in an IRA would not qualify for

exclusion from the bankruptcy estate under § 541(c)(2), but may be exempt under § 522(d)(10)(E) because the scope of the latter section exempts a much broader category of interests. *Shumate*, 504 U.S. at 762–63, 112 S.Ct. 2242;

This Court also rejects the Eleventh Circuit's finding in *Meehan* that "the plain meaning of the language of § 541(c)(2), which requires only that the restriction be 'enforceable under applicable nonbankruptcy law,'" supports the conclusion that the restriction on transfer does not have to be in the trust itself. *Meehan*, 102 F.3d at 1211. Rather, this Court agrees with Creditor that the plain meaning of the language of § 541(c)(2) requires that the restriction be in the trust itself to avoid redundancy within the statute. In other words, to accept the premise espoused in *Meehan*, that a transfer restriction within a state statute is sufficient to meet the requirements of § 541(c)(2), would render the language "enforceable under nonbankruptcy law" nugatory and meaningless surplusage because a state statute (nonbankruptcy law) is obviously enforceable under state law (nonbankruptcy law). This Court cannot embrace such an interpretation of the statute. *See Babbitt v. Sweet Home Chapter of Communities for a Great Or.*, 515 U.S. 687, 698, 115 S.Ct. 2407, 132 L.Ed.2d 597 (1995) (the Court has a "reluctance to treat statutory terms as surplusage"); *Feld v. Robert & Charles Beauty Salon*, 435 Mich. 352, 459 N.W.2d 279, 284 (1990) ("The fundamental rule of [statutory] construction [is] that every word of a statute should be given meaning and no word should be treated as surplusage or rendered nugatory if at all possible.").[5]

Furthermore, unlike *Meehan*, this Court believes that common sense supports the conclusion that the restriction on transfer must be contained within the trust document. The *Meehan* Court found that common sense dictates that "a restriction is no less enforceable because it is located in the statute rather than in the document." *Meehan*, 102 F.3d at 1212. However, this Court believes that such a general conclusion goes against common sense and the purpose behind § 541(c)(2). Specifically, common sense dictates that to find that the restriction on transfer does not have to be within the trust document, but may be provided in any statute, would lead to an absurd and overreaching result. For example, most states have adopted the Uniform Fraudulent Conveyance Law, or its counterpart. If this Court were to accept Debtor's contention in this case, then one could argue that such statutes (or analogous common law) should be considered as a restriction on transfer as set forth in § 541(c)(2). Not only is such a result overreaching, it also goes against the unambiguous purpose that § 541(c)(2) was designed to serve: the preservation of spendthrift or analogous trusts, such an argument should be unavailing under facts such as these. *See* H.R. No. 95–595, at 369, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6325.

Finally, this Court disagrees with and finds the case law relied upon by *Meehan* distinguishable from the facts at hand. *Meehan* initially relies upon *Whetzal v. Alderson*, 32 F.3d 1302 (8th Cir.1994) in support of its conclusion that the transfer restriction does not have to be in the plan itself, but may be in a statutory provision. *Meehan*, 102 F.3d at 1212. The *Meehan* Court reasoned:

In *Whetzal v. Alderson*, 32 F.3d 1302 (8th Cir.1994), the Eighth Circuit held that a debtor's interest in his civil service retirement benefits was excluded from his bankruptcy estate under § 541(c)(2) because of the statutory restriction on alienation contained in 5 U.S.C. § 8346(a). As in this case, the restriction on transfer was contained in the statute, *as neither the Whetzel opinion nor the statute indicates that there would be a plan document.*

*Id.* (emphasis added).

This Court finds *Meehan's* analogy to and interpretation of *Whetzal* misplaced for several reasons. First, the retirement plan at issue in *Whetzal* was not a private IRA (as in the instant case and *Meehan*), but a former federal employee's interest under the Civil Service Retirement Act ("the Act"), 5 U.S.C. § 8301 *et seq.*, where the plan was the Act.

---

5. However, as discussed *infra*, a different situation exists where the plan or trust itself is located within a statute, and the transfer restriction appears therein.

*Whetzal,* 32 F.3d at 1303. This Court disagrees with the statement in *Meehan* that "neither the *Whetzal* opinion nor the statute indicates that there would be a plan document," where it is clear by the statutory provisions that the Act is the retirement plan document. *Meehan,* 102 F.3d at 1212; *see* 11 U.S.C.A. § 8301 *et seq.* and § 8401 *et seq.* Where the very trust itself is created by or set forth in a statute, and the transfer on restriction is part of that statute, then a situation exists that is much different from the facts at hand. In addition, unlike the statutory provision in *Meehan* (and at issue), the Act clearly provides for a restriction on alienation that is enforceable upon *both* creditors and debtors:

> (a) The money mentioned by this subchapter is not assignable, either in law or equity, except under the provisions of subsections (h) and (j) of section 8345 of this title, or subject to execution, levy, attachment, garnishment, or other legal process, except as otherwise may be provided by Federal laws.

5 U.S.C.A. § 8346(a) (West.1996). The Court finds this distinction significant for purposes of satisfying § 541(c)(2). *See* discussion *infra* Part *b.* Therefore, the Court concludes that *Whetzal* does not support *Meehan's* holding that the transfer restriction need not be in the trust document itself.

The *Meehan* Court also relied upon *In re Yuhas,* 186 B.R. 381 (Bankr.D.N.J.1995) for support.[6] In *Yuhas,* an IRA that did not contain a restriction on transfer provision was excluded from the Debtor's bankruptcy estate under § 541(c)(2), because the Court found that a New Jersey statute that restricted access to the IRA constituted applicable nonbankruptcy law. *Yuhas,* 186 B.R. at 386. However, the Court finds *Yuhas* distinguishable from *Meehan* and the instant

case because of the unique nature of the New Jersey statute, N.J.Stat.Ann. § 25:2–1(b).[7] This statute makes a plan enforceable as a spendthrift trust if the Internal Revenue Service qualified the plan under the Internal Revenue Code ("IRC") for preferential tax treatment. Therefore, because the IRA qualified for preferential tax treatment, it was excluded from property of the bankruptcy estate under § 541(c)(2) by virtue of the New Jersey statute. However, neither Georgia (the state where *Meehan* was decided), nor Michigan has such a statute.[8] *See In re Dunn,* 215 B.R. at 126–27 (citing *In re Copulos,* 210 B.R. 61 (Bankr.D.N.J.1997)). In fact, the Michigan statute is clearly distinguishable from the New Jersey statute in that the specific purpose of Mich.Comp.Laws Ann. § 600.6023(1)(k) is to allow a debtor to exempt his IRA when the debtor elects the state exemptions under § 522(b). *See Moss,* 143 B.R. at 467. Although it is true that the IRA plan at issue in *Yuhas* did not itself contain a transfer restriction, the unique nature of the New Jersey statute, coupled with the fact that the IRA qualified for IRC preferential tax treatment, makes this case distinguishable and not persuasive. Rather, the Court finds the Supreme Court's statements in *Shumate,* regarding the necessity that the restriction on transfer be contained in the trust document for purposes of satisfying § 541(c)(2), to be persuasive and binding.

*b. Whether the Restriction on Transfer Must be Upon the Debtor as well as the Creditors*

■ Creditor also argues that Mich.Comp. Laws Ann. § 600.6023(1)(k) cannot serve to meet the restriction requirement of § 541(c)(2) because it restricts only creditors

---

**6.** Debtor in the instant case relies upon the *Yuhas* opinion from the court of appeals where the Third Circuit affirmed the bankruptcy court's decision. *See Orr v. Yuhas (In re Yuhas),* 104 F.3d 612 (3d Cir.1997).

**7.** N.J.Stat.Ann. § 25:2–1(b) (West 1996) provides in relevant part:

Notwithstanding the provisions of any other law to the contrary, any property held in a qualifying trust and any distributions from a qualifying trust, regardless of the distribution

plan elected for the qualifying trust, shall be exempt from all claims of creditors and shall be excluded from the estate in bankruptcy.

**8.** In Michigan, a debtor's interest in a pension plan is exempt from creditors' claims if the plan complies with both I.R.C. § 401 and ERISA. Mich.Comp.Laws Ann. § 600.6023(1)(*l*) (West Supp.1997). Here, the IRA is an individual for which ERISA does not apply.

from levying against Debtors' IRA funds and not Debtors themselves.

■ This Court finds that § 600.623(1)(k) cannot serve to meet the transfer restriction requirement of § 541(c)(2) because it only restricts creditors from levying against a debtor's interest in an IRA. This Court believes that the restriction upon transfer must be upon the debtor as well as creditors in order to satisfy the purpose behind the transfer restriction of § 541(c)(2): to preserve the existing status of the trust. As noted in Collier on Bankruptcy:

> [T]he Code defines the term "transfer" to mean "every mode, direct or indirect, absolute or conditional, *voluntary* or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." As under the Act, the term "transfer" includes involuntary, *as well as voluntary* transfers. The definition, therefore, includes any restriction on either creditors *or voluntary transferees.* A restriction on the beneficial interests of the debtor enforceable under nonbankruptcy law remains effective and both Committee reports explicitly indicate that it is meant to preserve the existing status of the trust.

5 Collier on Bankr. (MB) ¶ 541.25, at 541–80 (Dec.1996) (emphasis added) (footnote omitted).

With this in mind, it is clear that the restriction requirement necessary to satisfy § 541(c)(2) must be upon the debtor as well as the creditor. As stated by Collier, the term transfer refers to *voluntary* as well as involuntary transfers, and the restriction on transfer must therefore apply to *both* debtor and creditor. Accordingly, because § 600.6023(1)(k) only restricts creditors from levying against a debtor's IRA, this provision cannot serve to meet the transfer restriction as set forth in § 541(c)(2).

### c. Whether Mich.Comp.Laws Ann. § 600.6023(1)(k) May be Considered Applicable Nonbankruptcy Law

■ Creditor argues that § 600.6023(1)(k) is the statutory provision used when a debtor in this state elects the exemptions provided under 11 U.S.C. § 522(b), and that this provision cannot be considered "applicable nonbankruptcy law" for purposes of satisfying § 541(c)(2). Creditor claims that by allowing Debtors to use § 600.6023 to satisfy § 541(c)(2), and then allowing Debtors to use the federal exemptions provided under § 522(d)(10)(E), Debtors are availing themselves of both state and federal exemptions, which is not allowed under the Code. This Court agrees with Creditor.

■ 11 U.S.C. § 522(b)(2)(A) provides that a debtor must choose between the federal exemptions provided in § 522(d) or the state exemptions provided in § 522(b).[9] A debtor may not choose exemptions from both under the Code. *See Yuhas,* 104 F.3d at 615 n. 2. This Court agrees with Creditor that to allow Debtors to use Mich.Comp.Laws Ann. § 600.6023(1)(k) (the exemption used to meet the state exemption of § 522(b)) as the "applicable nonbankruptcy law" necessary to satisfy § 541(c)(2), and to then allow Debtors the benefit of the federal exemptions under § 522(d)(10)(E) would violate the Code.

■ Statutory provisions must be construed *in pari materia;* that is, in reference to one another. *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.),* 898 F.2d 498, 500–01 (6th Cir.1990) (citing *Oates v. Oates,* 866 F.2d 203, 206 (6th Cir.1989)). 11 U.S.C. § 541(c)(2). Therefore, § 541(c)(2) must be read in reference to § 522(b)(2)(A). Accordingly, this Court cannot allow Debtors to use § 600.6023 (the section used by debtors who choose state exemptions under § 522(b)) as relevant nonbankruptcy law for the purpose of satisfying § 541(c)(2), while also allowing Debtors to elect federal exemptions under § 522(d), because to do so would allow Debtors the benefit of both state and federal

---

**9.** 11 U.S.C. § 522(b)(2)(A) provides in relevant part: "any property that is exempt under Federal law, other than subsection (d) of this section, *or* State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located." (emphasis added.)

exemptions. Such a result is expressly prohibited by § 522(b)(2)(A).

■ In summary, this Court concludes that Debtors' interests in their respective IRAs are not excluded from property of their bankruptcy estate under § 541(c)(2). To find otherwise and allow Debtors to exclude their IRA funds from property of their bankruptcy estate, would leave us with the unacceptable result of allowing Debtors to place their assets beyond the reach of their creditors by essentially setting up revocable trusts for their own benefit. *See Dunn,* 215 B.R. at 127 (citing *Fornell v. Fornell Equip., Inc.,* 390 Mich. 540, 213 N.W.2d 172 (1973)); *Reitmeyer v. Gralka (In re Gralka),* 204 B.R. 184, 186 (Bankr.W.D.Pa.1997) ("[P]ursuant to 11 U.S.C. § 541(a)(1), the IRAs are presently property of the bankruptcy estate because they do not include spendthrift provisions enforceable under applicable nonbankruptcy law and, thus cannot be excluded from the estate pursuant to § 541(c)(2).").[10] With that said, the next inquiry then becomes whether Debtors' interests in the IRA are exempt under § 522(d)(10)(E).

### Application of 11 U.S.C § 522(d)(10)(E)

■ Creditor argues that Debtors' interests in their respective IRAs are not exempt under § 522(d)(10)(E) because Debtors have a present right to withdraw funds, albeit with a 10% penalty, and payment therefore is not contingent upon their age (or illness, disability, death, or length of service). Creditor contends that the language of

§ 522(d)(10)(E) is clear, should be enforced as written, and specifically requires that only a debtor's right to receive payment under one of the listed factors (age, illness, disability, death, age, or length of service) is exempt under this section. Debtors argue that, because they do not have a present right to receive payment from their IRA without imposition of a 10% penalty before reaching age 59½, their right to payment is on account of age and their interest in the IRAs is therefore exemptible. Debtors further argue that their IRAs are exempt because Part (iii) of § 522(d)(10)(E) specifically states that plans that qualify under IRC § 408 (the section of the IRC that deals solely with IRAs), and that meet the requirements of subsections (i) and (ii), are exempt under this section. Finally, Debtors argue that the congressional goal of preserving pension plans is furthered by exempting their IRAs from the bankruptcy estate. Although this Court recognizes that there is authority to support both Creditor and Debtors' positions on this issue, this Court is most persuaded by the reasoning and authority behind Creditor's position.[11]

Under 11 U.S.C. § 522(d)(10)(E), a debtor may exempt from property of his bankruptcy estate:

(10) The debtor's right to receive—

• • • • •

(E) a payment under a stock bonus, pension, profitsharing annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the

---

**10.** Furthermore, as accurately noted in *Gralka,* even if Debtors' IRAs included spendthrift provisions, it is unlikely that such restrictions would be enforceable under applicable nonbankruptcy law. *Gralka,* 204 B.R. at 186 n. 1. The restrictions would not be enforceable under federal law under the Employee Retirement Income Security Act ("ERISA"), because the IRAs were established by Debtors rather than an employer. 29 U.S.C. §§ 1002(2)(A), (3); 1003(a). Likewise, the restrictions would not be enforceable under the I.R.C. because, although the IRAs may be qualified under 26 U.S.C. § 408(a), such qualification is not predicated on compliance with a restriction on alienation. 26 U.S.C.A. § 401(a)(13) (West Supp.1997) (the spendthrift restrictions in this paragraph only apply to stock bonus, pension, or profit-sharing plans whose trusts are qualified under § 401(a)). In addition, the restrictions would not be enforceable under

Michigan law, because an IRA is, by nature, a self-settled trust, and therefore cannot be placed beyond a creditor's reach. *See Dunn,* 215 B.R. at 127–28.

**11.** For authority in support of Debtors' position, see, e.g. *Carmichael v. Osherow (In re Carmichael),* 100 F.3d 375 (5th Cir.1996); *Gralka,* 204 B.R. at 187–89; *In re Bates,* 176 B.R. 104 (Bankr.D.Me.1994); *In re Hall,* 151 B.R. 412 (Bankr.W.D.Mich.1993); *In re Cilek,* 115 B.R. 974 (Bankr.W.D.Wis.1990). For authority in support of Creditor's position, see, e.g., *In re Evenson,* 165 B.R. 27 (Bankr.E.D.Mich.1994); *In re Moss,* 143 B.R. 465 (Bankr.W.D.Mich.1992); *In re Herbert,* 140 B.R. 174 (Bankr.N.D.Ohio 1992); *In re Pauquette,* 38 B.R. 170 (Bankr.D.Vt. 1984).

support of the debtor and any dependent of the debtor, unless—

> (i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;

> (ii) such payment is on account of age or length of service; and

> (iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b) or 408 of the Internal Revenue Code of 1986.

11 U.S.C. § 522(d)(10)(E).

In *Evenson*, 165 B.R. at 30, Judge Arthur Spector sustained a Trustee's objection to the Debtor's claim of exemption in an IRA under § 522(d)(10)(E) on the basis that the IRA did not restrict the Debtor's right to receive payment except "on account of illness, disability, death age or length of service," as set forth in the statute. The IRA at issue in *Evenson* allowed the Debtor the right to withdraw funds from her IRA penalty-free at age 59½; however, it also allowed the Debtor the right to withdraw funds at any time prior to this age "only on pain of a 10% penalty." *Id.* at 28. As such, the *Evenson* Court held that, because the Debtor had a present right to receive payment from her IRA, the IRA did not meet the "on account of" test, and therefore could not be claimed as exempt under § 522(d)(10)(E). *Id.* at 30. In doing so, Judge Spector specifically noted that he did not hold that IRAs as a class were not exempt, simply those that did not meet the "on account of" test of § 522(d)(10)(E). *Id.* at 29. Judge Spector reasoned:

> I believe IRAs can exist which do meet the "on account of" test of § 522(d)(10)(E). There is nothing in the legislation establishing IRAs or the tax regulations regarding them which prohibits a person from including in the IRA contract a provision that the trustee may not disburse until age 59½ except for certain of the hardships specified in 26 U.S.C. § 72(t). By including such a spendthrift provision, a person would retain the tax benefits of an IRA and the exemptibility under § 522(d)(10)(E). Of course, such a provision would come at the expense of control. And, as Judge Stevenson said in *Moss*, that's the point. If an IRA is like most (and the one involved here), providing a right to payment at will, it allows for control and is therefore not on account of one of the enumerated factors: "illness, disability, death, age or length of service." So, even though an IRA like the one here, which does not limit withdrawals to these types of events, would not be exempt under § 522(d)(10)(E), that section has utility.

*Id.* at 29–30.

This Court agrees with Judge Spector's premise that IRAs that allow immediate access, albeit with a penalty, are not exempt under § 522(d)(10)(E) because they do not meet the "on account of" test. However, this Court believes that it can go one step further and hold that, as such, IRAs, as a whole as they stand today, are not exempt under this section. IRAs as they exist today are standardized agreements that vary little between sponsoring financial institutions, where all allow for present payment based upon some sort of penalty fee for withdrawal before age 59½.[12] Therefore, although it may be possible for a person to include a provision in the IRA that would satisfy the "on account of test" (that a trustee could not disburse funds until age 59½), as suggested by Judge Spector, in reality, because of the nature of the fairly standardized IRA plans, this Court believes that such a result is unlikely.[13]

---

12. *See* Jane Bryant Quinn, *To Roth IRA, Just Say Yes*, Wash. Post (Aug. 12, 1997) <http://www.washingtonpost.com/wp-srv/business/longterm/quinn/columns/081297/.htm>. A person has three types of IRAs from which to choose: the Roth IRA (named for Senator William Roth, Jr.) allows for tax free compounding; the tax-deductible IRA where a person may contribute up to $2,000 that grows tax deferred, but the holder is taxed when he takes money out and usually owes a 10% penalty on withdrawals prior to age 59 ½; and the educational IRA that allows a person to invest an additional $500 that goes into an education account for a minor child which is tax deferred and becomes tax free if used for higher education—a qualified trade school, community college, or four-year college.

13. However, as noted previously, such a spendthrift provision in an IRA could not serve to meet the transfer restriction requirement necessary to

In fact, the latest trend in IRAs leads this Court to believe that a person would rarely, if ever, choose to include such a restriction even if it were suggested to him. The latest IRA plan (the Roth IRA) offers a holder even *greater* access to his IRA prior to age 59½.[14] Specifically, under the Roth IRA, a person may put up to $2,000 annually into this account, and may withdraw money from the account *penalty free* prior to age 59½ to pay for a first home or for higher education.[15] In addition, if a Roth IRA has been open for at least five years, withdrawals would be *tax-free* and *penalty-free* by a holder who is under 59½ years of age, if the money is used for a first-time home purchase (up to a lifetime limit of $10,000 per IRA holder).[16] If the holder is 59½ years of age or older, withdrawals are tax-free, penalty free, and, unlike tax-deferred IRAs, there is no requirement that the distributions begin when the holder reaches age 70½.[17]

The Court is not saying that a standardized IRA could not be developed by sponsoring financial institutions that would meet the "on account of" requirement of § 522(d)(10)(E). Presumably, a new IRA could be instituted by a sponsoring financial institution that met the "on account of" provision simply by disallowing a right to payment before one of the stated "on account of" factors (illness, disability, death, age, or length of service) i.e., no right to payment before any one of these factors even with a penalty. However, based upon the recent trend in IRA options (the Roth IRA), this Court believes that such a restricted IRA would not be popular among investors. The recent trend in IRAs leads this Court to believe that investors choose such types of retirement plans because they afford investors immediate access to their money, while still allowing the investor to benefit from various tax-savings. In other words, investors choose this type of retirement fund because it affords them control. And, once

again, that is the point. If a debtor has control over when he can obtain access to the funds, by simply paying a penalty fee, then his payments are not "on account of illness, disability, death, age, or length of service."

As Judge Stevenson stated in *Moss* when she determined that IRA accounts are simply demand accounts:

> The Debtors admit that they may obtain access to the funds. Even though significant penalties may attach to cashing out the IRAs, the Debtors are not prohibited from doing so. *This right of control is significant*.... We are not unmindful that the exemption provisions of the Bankruptcy Code are to be construed liberally and that the protections of future earnings found in § 522(d)(10)(E) should also extend to the self-employed. However, there were avenues the Debtors could have chosen which would have permitted them to shelter the funds at issue here.... Presumably one reason for their choice is that they retained a greater degree of control over the funds invested through the IRA. The Court attaches no significance to the Debtors' statements that they will not exercise this control but will wait until retirement age to draw upon the funds. It is inconceivable that a debtor in bankruptcy, no matter how well-intentioned, faced with the choice of turning IRA funds over to creditors or delaying access to the funds until retirement would acknowledge that if exempted they would promptly liquidate the IRA.

*Moss*, 143 B.R. at 467 (emphasis added).

Such is the case here. Debtors not only were allowed control over their IRA funds, they, in fact, exercised such control by withdrawing a total of $17,000 (subject to a 10% penalty) from their IRAs during the two years prior to filing their Chapter 7 petition. So, the issue once again comes down to

---

satisfy § 541(c)(2), and to remove the IRA from property of the estate. *See supra* note 9.

**14.** The Roth IRA is also known as the Super, Plus, American Dream, or back-loaded IRA. *See* Investing for Your Retirement @ Strong (Jan. 13, 1998) <http://www.strongfunds.com/strong/Retirement/roth/rothq&a.htm>.

**15.** *Id.*

**16.** *Id.*

**17.** *Id.*

choice and control. By virtue of Debtors' actions, it is likely that they chose this type of retirement account because it afforded them control and immediate access to their invested funds. Essentially, Debtors treated their IRAs as tax preferred savings accounts, not as funds that they were saving for retirement. As noted by Judge Laurence Howard in *In re Rector*, 134 B.R. 611, 616 (Bankr. W.D.Mich.1991) (and as quoted with approval by Judge Stevenson in *Moss*, 143 B.R. at 467), deciding whether an investment is exempt under § 522(d)(10)(E) "boils down to determin[g] whether the ... plan was established to provide payment to the participant[ ] in the event of occurrences sanctioned under § 522(d)(10)(E) or whether the plan is ... merely a savings device, or income tax shelter." Because Debtors here treated their IRAs merely as tax-preferred savings accounts, it is apparent that the accounts were not established payment in the event of one of the occurrences sanctioned under § 522(d)(10)(E). Therefore, the funds are not exempt under this section.

Debtors argue that, by so holding, this Court is ignoring the plain language of § 522(d)(10)(E)(iii) that excludes plans or contracts from exemption which meet the requirements of subsection (i) and (ii) that do not qualify under section 401(a), 403(a), 403(b), or 408 (the section that deals solely with IRAs) of the Internal Revenue Code. Debtors contend that "[i]t is crystal clear by the reading of the entire statute that Congress intended 11 U.S.C. [§ 522](d)(10)(E) to exempt IRAs. To hold otherwise would effectively re-write § 522(d)(10)(E)(iii) by ignoring the reference to section 408 of the Internal Revenue Code." (Debtors' Brief in Support of Claimed IRA Exemptions, p. 10).

This Court disagrees and finds Debtors' argument shortsighted. Debtors fail to acknowledge that Part (iii) of § 522(d)(10)(E) cannot be read without also considering the language of Part (E) of the same; namely, the "on account of factors." *See, GTE Mobilnet of Ohio v. Johnson*, 111 F.3d 469, 479 (6th Cir.1997) (statutory provisions must be read as a whole, where the language is considered in context and not piecemeal). In its holding today, the Court is not "ignoring" the

fact that, via Part (iii), Congress may have allowed for IRAs to be exempt under § 522(d)(10)(E). The Court is simply stating that only those IRAs that meet the "on account of" factors of Part E are exempt under this section, and that the standardized IRAs as they exist today do not meet the factors. In doing so, the Court is construing § 522(d)(10) as a whole so as to produce a harmonious result between Part (E) and Part (iii). *See id.; compare In re Hall*, 151 B.R. at 426.

In addition, this Court is not persuaded by those cases which hold that exemptibility is not destroyed simply because the fight to receive payment is made on account of an additional factor (payment at anytime subject to a 10% penalty) to those listed. *Carmichael* is such a case, where the Fifth Circuit held:

> As long as the right to receive a payment under a plan or contract can be triggered by one or more of the five listed events, and is therefore exemptible, the fact that payments can also be triggered by some additional factor—or absence of some additional factor—cannot destroy exemptibility. Once one (or more) of the listed events is found to apply, it (or they) need not be the sole prerequisite to all rights to receive payment. Neither need the listed event (or events) block the right to receive payment under some other situation.

*Carmichael*, 100 F.3d at 379.

This Court cannot embrace the premise espoused in *Carmichael*, because to do so renders the "on account of" factors of Part (E) superfluous. *See Babbitt*, 515 U.S. at 698, 115 S.Ct. 2407. As in the instant case, if a holder is allowed payments from his IRA at anytime (albeit with a 10% penalty), then payments are not made "on account of" one of the factors enumerated in the statute. Rather, payments are made at the holder's whim. Accordingly, such a result renders the "on account of" factors meaningless. In fact, the Court in *Carmichael* admits that "[n]one dispute that the list [of Part (E)] is exclusive and mandatory in that ... the right to receive payment under a 'similar plan or contract' must be triggered by at least one of the five events." *Carmichael*, 100 F.3d at

379. As such, it logically follows that if a plan allows for payment *before* one of these "exclusive" triggering threshold events have occurred, the plan does not meet the requirements of Part (E). Furthermore, if payments are made to the holder at anytime for any reason, then the monies held in the account are not serving to further the purpose of providing for the holder's retirement needs. Instead, the monies are being used as needed prior to retirement, just as would be done with a savings account. Therefore, under such circumstances, the exemption should not be allowed. *Moss,* 143 B.R. at 467.

Finally, although the Court recognizes the general concern that debtors be afforded a fresh start in bankruptcy, and the general concern that individuals provide for their retirement needs, the Court finds that such concerns are met simply by a debtor choosing the appropriate exemption under § 522. The Code offers choices and those choices lie within the debtor. Here, Debtors could have chosen their state exemption rights, in which case their IRA exemptions would have been allowed. See 11 U.S.C. § 522(b); Mich. Comp.Law Ann. § 600.6023(1)(k). It is not for this Court to misconstrue the Code to accommodate the Debtors' incorrect choice. Having found that Debtors' IRAs are not exempt under § 522(d)(10)(E), this Court will now address Debtors' claim of exemption under § 522(d)(5).

*Application of 11 U.S.C § 522(d)(5)*

Creditor's final argument is that Debtors may not exempt the full amounts of their IRAs under the general exemption of § 522(d)(5). Creditors note that $8,300 is available to each Debtor under this section, for a total exemption of $16,600. Creditors claim that, because Debtors have asserted their general exemption under this section as to (i) $100 in cash; (ii) $2,000 of office equipment; (iii) $1,000 in T & I Credit Union account, only $13,500 remains for the IRA exemptions. Creditors therefore conclude that, subtracting $13,500 (the allowed remaining exemption under § 522(d)(5)) from $21,603 (the aggregate amount of Debtors'

IRAs) leaves $8,103.87 available as nonexempt for creditors.

Under 11 U.S.C. § 522(d)(5), a debtor may exempt his "aggregate interest in any property, not to exceed in value $800 plus up to $7,500 of any unused amount of the exemption provided under paragraph (1) of this subsection." Therefore, as noted by Creditor, Debtors in the instant case may exempt an aggregate amount of $16,600 ($8,300 × 2 debtors) under this section.

According to Debtors' Schedule C ("property claimed as exempt") filed in this case, Debtors originally claimed the following as exempt under § 522(d)(5):

1.) $ 100.00 in cash

2.) $2,000.00 in office equipment

3.) $1,000.00 in a T & I Credit Union Account

However, on September 30, 1997, Debtors amended their Schedule C exemptions under § 522(d)(5) to read:

1.) $100.00 in cash

2.) $542.01 in a T & I Credit Union Account

Debtors also amended Schedule C to exempt $2,000 in office equipment under 11 U.S.C. § 522(d)(6); rather than § 522(d)(5). Accordingly, Debtors claim a total of $642.01 exempt under § 522(d)(5).

Therefore, subtracting $642.01 (the amount claimed as exempt) from $16,600 (the aggregate amount allowed exempt), Debtors are left with a net exemption $15,957.99 under § 522(d)(5) for their IRAs. Subtracting the net exemption allowed ($15,957.99) from the total amount of Debtors' respective IRAs ($21,603), leaves a net amount of $5,645.01 as nonexempt and available for creditors.

Conclusion

In summary, this Court finds that Debtors' IRAs are property of the estate under § 541, and not exempt under § 522(d)(10)(E). In addition, the Court finds that $15,957.99 of Debtors' IRAs is exempt under § 522(d)(5), thereby leaving a net amount of $5,645.01 as nonexempt and available to creditors.

Creditor shall submit an order consistent with this Opinion.