**In the matter of Keith Evan
KRAMER, Debtor.**

**No. 99–56269–WS.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

May 17, 2000.

Stuart A. Gold, Gold, Lange & Majoros, P.C., Southfield, MI, appeared on behalf of the Chapter 7 Trustee.

Philip V. Tomlinson, Berkley, MI, appeared on behalf of the Debtor.

## OPINION

WALTER SHAPERO, Bankruptcy Judge.

Debtor claims that his interests in four individual retirement accounts (IRAs) are exempt under § 522(d)(10)(E). Trustee objects to Debtor's claim of exemption. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a).

## THE PLAN PROVISIONS

Debtor scheduled his IRA with American Funds Service Company at a value of $17,000. The plan does not limit an account owner's ability to withdraw funds. However, the determination of whether any distribution is or is not includible in the account owner's gross income depends on the reason for the withdrawal, i.e. whether it is a "qualified distribution."

Debtor's second IRA, with Putnam Investments, has a scheduled value of $7,700. The plan allows distributions "in accordance with instructions from the Participant." Any distributions requested by a non-disabled participant before reaching age 59½ must be accompanied by a written statement "declaring his intention as to the disposition of the amount distributed." The disclosure statement outlines tax consequences of withdrawals.

Debtor's third IRA is with Franklin Templeton, and it is listed at a value of $6,000. The plan only limits distributions to the extent that requests are made "in good order." The plan also discloses tax consequences for "premature distributions."

Debtor's last IRA is through Phoenix Investment Partners, and he scheduled the value at $17,100. Any requests for withdrawal must "be in writing on a form provided by or acceptable to" Phoenix Investment, with the method of distribution and the tax identification number of the recipient specified. The disclosure statement outlines the tax penalties for early distribution.

## ANALYSIS

Section 522(d)(10)(E) provides that Debtor may exempt his "right to receive . . . a payment under a stock bonus, pension, profitsharing, annuity or similar plan or contract on account of illness, disability, death, age or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of

the debtor." 11 U.S.C. § 522(d)(10)(E). However, this provision excludes from exemption plans or contracts that meet three specific conditions, including disqualification under certain sections of the Internal Revenue Code ("IRC"). One of the stated IRC sections governs IRAs. *See* 11 U.S.C. § 522(D)(10)(E)(iii) (referencing IRC § 408). Thus, any unqualified IRA would not be exemptible.

It is helpful to separate the analysis of whether Debtor's IRAs are exempt into three issues: (1) whether the IRAs may be considered "similar plans or contracts"; (2) whether payments that may be triggered for reasons other than the five "on account of" factors are protected; and (3) whether the payments are reasonably necessary for support.

As to the first issue, it is generally accepted that an IRA qualifies as a "similar plan or contract," such that a debtor's right to receive payment under an IRA may be exempted under § 522(d)(10)(E). *See In re Hall*, 151 B.R. 412, 426 (Bankr. W.D.Mich.1993). However, some courts have stopped their analysis after finding that IRAs cannot fall within the exception of § 522(d)(10)(E)(iii), and then prematurely conclude that IRAs are thus *exempt. See, e.g., Farrar v. McKown*, 203 F.3d 1188, 1190 (9th Cir.2000) (analyzing California state exemption statute that is "materially identical to the federal exemption"); *In re Hermes*, 239 B.R. 491, 495–97 (E.D.Mich.1999) (finding IRA was exempt for three reasons: (1) IRAs have similar characteristics to listed plans; (2) the exclusion in subsection (iii) shows an intent that "IRAs were intended to be classified as a 'similar plan or contract,' and thus exempt"; and (3) to deny exemption would

unfairly "penalize individuals who are not in a position to participate in a pension plan or profit sharing plan"); *In re Hall*, 151 B.R. at 425–26. Instead, after meeting this first hurdle of finding that the IRC "reference to IRAs in the exception makes inescapable the conclusion that at least some—if not all—IRAs were intended to be included in the phrase 'similar plans or contracts,'" the conclusion should be that the right to receive a payment under an IRA is *exemptible*, meaning potentially exempt. *Carmichael v. Osherow* (*In re Carmichael*), 100 F.3d 375, 378 (5th Cir.1996); *see also In re Lightbody*, 240 B.R. 545, 547 (Bankr.E.D.Mich.1999) (separately analyzing whether a deferred compensation plan is a "similar plan or contract").[1]

Relative to the IRC, all IRA plans or contracts fall into two categories: either qualified or unqualified. Subsection (iii) unequivocally excludes any unqualified IRAs from being exemptible. Payments under the remaining qualified IRAs may or may not be exemptible, depending on whether they meet the rest of the requirements of § 522(d)(10)(E), including the "on account of" and "reasonably necessary" provisions. The Court must go on to analyze the "on account of" language, or else render it a nullity. To conclude that payments under an IRA are exempt simply because IRAs do not fall within the exception in subsection (iii) would also ignore the third part of the analysis—that exempt payments are limited to those reasonably necessary for the debtor's support.

 Note also that the exception to exemptibility under subsection (iii) refers to "plan or contract," yet the exemption is

---

1. The Court addressed the argument that payments under an IRA are exempt because IRAs cannot be excluded under subsection (iii) in *In re Zott*, 225 B.R. 160 (Bankr.E.D.Mich. 1998). The debtors in that case claimed that "plans that qualify under IRC § 408 ... are exempt under [§ 522(d)(10)(E)]." *Id.* at 168, 171. Although not disagreeing with the import of the reference to IRC § 408, the Court found the argument "shortsighted," and went

on to find that IRAs generally are not exempt due to their failure to meet the "on account of" factors. *Id.* at 169, 171–72. The Court did not find that IRAs were not *similar plans or contracts. See In re Hermes*, 239 B.R. 491, 495 (E.D.Mich.1999) (misreading *Zott* as concluding that the failure of an IRA to meet the "on account of" language "prevents it from being a 'similar plan or contract' ").

applicable only to a "debtor's right to receive a payment under" such a plan or contract. This further supports an analytical separation between the conclusion that an IRA is a "similar plan or contract," and the determination of whether payments under it are exempt or non-exempt under the balance of the provision. Had Congress intended that a debtor's interest in an IRA plan or contract *itself* be exemptible, it could have done so, as it did in § 522(d)(7) in exempting "[a]ny unmatured life insurance contract owned by the debtor." Therefore, the Court concludes that the fact that an IRA is qualified under IRC § 408 is not dispositive on the issue of exemptibility.

As to the second issue, courts disagree as to whether the five "on account of" factors must be the *exclusive* reasons for payment under the plan. Some courts have found that the absence of the words "solely" or "only" in § 522(d)(10)(E) means that the provision "does not express a requirement that the right to receive a payment under a 'similar plan or contract' be conditioned 'only' or 'solely' or 'exclusively' on one of the five listed events." *Carmichael*, 100 F.3d at 379. The *Carmichael* court found that a right to payment for other reasons, *in addition to* the five stated reasons, should not destroy exemptiblity. The court reasoned that, "[a]s long as the right to receive a payment under a plan or contract can be triggered by one or more of the five listed events, and is therefore exemptible, the fact that payments can also be triggered by some additional factor—or absence of some additional factor—cannot destroy exemptibility." *Id.*

This "on account of" language appears in two other subsections of § 522. Sections 522(11)(B) and (D) exempt payments "on account of wrongful death of an individual of whom the debtor was a dependent... [and] personal bodily injury." 11 U.S.C. § 522(11)(B), (D). Additional factors should not be read into the statute. A right to payment could not be exempt under § 522(d)(11)(B) "on account of" *dismemberment*, or "on account of" *mental anguish* or *personal property damage* under § 522(d)(11)(D). However, to illustrate the reasoning in *Carmichael*, if a debtor has a right to payment on account of both death *and* dismemberment, and ultimately may receive payment on account of dismemberment (but not death), then the additional reason should not destroy exemptibility.

In *In re Zott*, 225 B.R. 160 (Bankr. E.D.Mich.1998), the Court disagreed with this analysis. The problem is that IRA holders generally have the right to payment for *any* reason. This is the case with Debtor's plans. If Debtor receives an early distribution, then he is subject to paying a tax penalty. However, his right to payment is absolute, on demand, with only some formality such as stating the reason for the withdrawal in writing.

> [I]f a holder is allowed payments from his IRA at anytime (albeit with a 10% penalty), then payments are not made "on account of" one of the factors enumerated in the statute. Rather, payments are made at the holder's whim. Accordingly, such a result renders the "on account of" factors meaningless.

*Zott*, 225 B.R. at 171.

The reasoning of *Carmichael* leaves Debtor able exempt his right to receive payments under his IRAs,[2] using the listed factor of age, yet he remains free to access

---

**2.** Section 522(d)(10)(E) does not provide for exemption the IRA *itself*, as it does with a life insurance contract in § 522(d)(7). Instead, the exemption clearly applies to a "debtor's *right to receive a payment* under a ... plan or contract." The court in *Carmichael* defined this as "debtor's presently vested right to receive a payment in the future," and distinguished this interest from any interest in the plan itself. *Carmichael*, 100 F.3d at 377, 379 (emphasis omitted). This presents a conceptual problem for IRAs. The Court is unsure how one can protect a stream of payments from what is in effect a self-settled, revocable trust (freely revocable but with tax consequences for revocation prior to reaching age 59½), without also protecting the corpus of the trust itself.

those funds for any other reason. In effect, a base hit becomes an automatic home run for debtors. This renders what the Court believes Congress intended to be a limited exemption for future retirement income virtually unlimited. *See In re Hermes*, 239 B.R. at 495 ("The legislative history characterizes the benefits included in paragraph (10) as being akin to future earnings, the intent being to ensure that such benefits are available for retirement purpose.") (internal quotation marks and citations omitted). In addition, IRAs, at least as they are structured today, may not in practice have as much to do with saving for retirement as people suppose. *See In re Zott*, 225 B.R. at 170; Patricia E. Dilley, *Hidden in Plain View: The Pension Shield Against Creditors*, 74 Ind. L.J. 355, 415–29 (1999) (discussing history of IRAs, their exemption in bankruptcy, and asking "what's retirement got to do with them?"); Richard L. Kaplan, *Retirement Funding and the Curious Evolution of Individual Retirement Accounts*, 7 Elder L.J. 283 (1999) (describing IRAs as "all-purpose investment kitties").

The unavailability of credible data precludes comprehensive analysis here of whether or not IRAs are in fact proving to be the retirement funding vehicles the legislature originally had in mind. What this Court can say is that it has experienced frequent use of permitted pre-retirement distributions from IRAs (and other types of such special purpose accounts—which seem to be proliferating) to fund obligations to creditors or other perceived important or current crucial needs of debtors, and, that any tax penalty involved in such withdrawal and use of the funds provides little or no disincentive to drawing down the funds. That is not necessarily a bad thing. However, it does belie the apparent legislative purpose behind the statute at issue. Having money available upon retirement may be an important motive to the creation and continued funding of such accounts, but the exigencies of life prior to retirement would appear to be or have become an important if not dominant factor in their pre-retirement use. If that is so, it would appear, however, the weight of opinion is moving in the direction of having those who pass the laws (rather than those of us who interpret them) decide whether or not that is what they want or intended. This Court therefore now reluctantly bows to that trend and view, more for its currency than its logic.

## CONCLUSION

The Court is left with the conviction that IRAs are a bit of a square peg in the round hole of § 522(d)(10). Applied to IRAs, this exemption protects a right to payment from a revocable, self-settled trust, (generally a machination contrary to a fair and equitable distribution of assets), yet without protecting the trust, and purportedly protects retirement income yet leaves debtors free to use the funds for any purpose at any time, and in effect allows debtors to prefer certain creditors while denying payment to others. Although the Court still thinks that its analysis and holding in *Zott* are sound, they are based on legislative history and public policy. If the statutory language, as analyzed by the court in *Carmichael*, allows exemptibility based on age, yet does not require payment to be on account of age, then so be it.

Accordingly, Trustee's objection is overruled. Debtor shall submit an order consistent with this opinion, including setting an evidentiary hearing on the issue of whether the payments are reasonably necessary.