**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 96-50013
_____

IN THE MATTER OF DOUGLAS A. CARMICHAEL,

Debtor-Appellant

versus

RANDOLPH N. OSHEROW, TRUSTEE,

Appellee

_____

Appeal from the United States District Court
for the Western District of Texas

_____

November 13, 1996

Before DAVIS, SMITH, and WIENER, Circuit Judges.

WIENER, Circuit Judge:

In this bankruptcy case, Debtor-Appellant Douglas Carmichael (Debtor) appeals the decision of the district court affirming the bankruptcy court's order that granted Bankruptcy Trustee-Appellee Randolph N. Osherow's (Trustee) objection to exemption of Debtor's individual retirement account (IRA) from his bankruptcy estate (estate). The issue to be decided is whether an IRA that--as all IRAs must--gives the owner the right to receive payments after attaining age 59-1/2, but also allows receipt of payments prior to attaining that age upon payment of a penalty tax, is exempt from the bankruptcy estate under §522(d)(10)(E) of the Bankruptcy Code (Code). Concluding that IRAs are exempt under the applicable

provision,[1] we reverse and render.[2]

I.

FACTS AND PROCEEDINGS

Debtor, an independent emergency room physician who was diagnosed in 1995 with Multiple Sclerosis and Retinitis Pigmentosa, a degenerative eye disorder, had established an IRA in 1991 as his primary source of retirement funds. Provisions of the Internal Revenue Code (IRC) permit Debtor to begin withdrawing funds from the IRA when he attains age 59-1/2. Typically, the IRA contains no anti-alienation provision, so Debtor may withdraw funds before attaining that age if he pays a statutory 10% penalty tax[3] and gives written notice to the custodian as specified in the custodial agreement.

In February 1995, Debtor filed for relief under Chapter 7 of the Code, and the Trustee was appointed to administer the estate. Debtor elected the federal exemptions and, pursuant to 11 U.S.C. §522(d)(10)(E), listed as exempt from the estate the $16,323.49 held in his IRA. The Trustee filed an objection to Debtor's exemption, and the bankruptcy court held that Debtor's IRA was not exempt from the estate under 11 U.S.C. §522(d)(10)(E). The

---

[1]The following analysis may not be applicable to some specially tailored IRAs.

[2]The finding by the bankruptcy court that the full amount of the IRA was reasonably necessary for the support of Debtor and his dependents was neither appealed by Trustee nor found to be clearly erroneous by this court. Consequently, the full amount of the IRA is exempt.

[3]26 U.S.C. §72(q) (1994).

district court affirmed the decision of the bankruptcy court, and Debtor timely appealed.

II.

ANALYSIS

A.   STANDARD OF REVIEW

The exemption question presented here is purely an issue of law, which we review de novo.[4]

B.   APPLICABLE LAW

The broad language of the Code provides that the estate of the debtor includes "all legal or equitable interests of the debtor in property as of the commencement of the case."[5]  Property initially included in the estate may be excluded subsequently, however, pursuant to the exemption in §522.  More specifically pertinent to our inquiry, §522(d)(10)(E) provides as follows:

> (d) The following property may be exempted under section (b)(1) of this section: . . .
>> (10) The debtor's right to receive . . .
>>> (E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless-
>>>> (i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;
>>>> (ii) such payment is on account of age or length of service; and
>>>> (iii) such plan or contract

---

[4]Bridges v. City of Bossier, 92 F.3d 329 (5th Cir. 1996).

[5]11 U.S.C. §541(a)(1) (1994).

3

> does not qualify under section
> 401(a), 403(a), 403(b), or 408 of
> the Internal Revenue Code of 1986.

The focus of our inquiry, one which heretofore has not been decided by this court, is whether an IRA qualifies for the §522(d)(10)(E) exemption.[6]

## C.   SIMILAR PLAN OR CONTRACT

To qualify for the exemption under §522(d)(10)(E), the interest in question must be "the debtor's right to receive a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract."[7]  Thus it is not the plan or contract that either is or is not exempt, but the *right* to *receive* a *payment* from a plan or contract (if qualified under §522(d)(10)(E)) that will enjoy exemption.  An IRA is not a stock bonus, pension, profitsharing, or annuity plan or contract; therefore, to qualify for the exemption, an IRA must be a "similar plan or contract."  We hold that for purposes of §522(d)(10)(E), an IRA is a "similar plan or contract."

First, the four types of plans or contracts that are listed by name in paragraph (d)(10)(E) as per se exempt are substitutes for future earnings.  IRAs too are substitutes for future earnings in that they are designed to provide retirement benefits to individuals.  The age limitation on withdrawal illustrates

---

[6]As the instant IRA qualifies under §408 of the Internal Revenue Code, applicability of the conjunctive three part exception to the exemption, found in §522(d)(10)(E)(i)-(iii), is not an issue.

[7]11 U.S.C. §522(d)(10)(E) (1994).

4

Congress' intent to provide income to an individual in his advanced years. To exempt an IRA as a "similar plan or contract," then, is consistent with the treatment of other deferred compensation and retirement benefits.

Second, subparagraph (d)(10)(E)(iii) specifically denies exemption to those "similar plans or contracts" that come within the proscription of (d)(10)(E)(i) and (ii) and also fail to qualify under, *inter alia*, IRC §408, a provision dealing exclusively with IRAs. This express Code-section reference to IRAs in the exception makes inescapable the conclusion that at least some--if not all-- IRAs were intended to be included in the phrase "similar plan or contract." Were that not so, there would be no exempt §408 plans or contracts from which non-§408 plans or contracts could be exceptions.

In other words, inasmuch as the phrase "similar plan or contract" in subsection (iii)'s specific exception to the exemption includes IRAs that do qualify, that exact phrase--"similar plan or contract"--must likewise include qualifying IRAs in the general exemption of paragraph (d)(10)(E). "There is a presumption that the same words used twice in the same act have the same meaning."[8]

Third, to conclude that IRAs are not exempt would be to suggest that Congress intended to penalize self-employed individuals for their choice of the form in which their retirement assets are held. This result would be antithetical to Congress'

---

[8]In re Hall, 151 B.R. 412, 425 (Bankr. W.D. Mich. 1993)(citing 2A N. SINGER, SUTHERLAND STATUTORY CONSTRUCTION §46.05 (1992)).

solicitude for retirement benefits for self-employed individuals. By analogizing the treatment of IRAs to Congress' treatment of other retirement plans in §522(d)(10)(E), we find it more than plausible to infer that Congress intended for IRAs to be treated similarly for purposes of exemption. Indeed, to hold otherwise would be to create a trap for the unwary in those frequent instances in which funds from other exempt plans are "rolled over" into IRAs when those other plans terminate or when employment ceases. After all, Congress has, in the overall retirement scheme of the IRC, selected the IRA to serve as a sort of universal conductor through which transfers must pass if they are to avoid the rocks and shoals of inadvertent taxable events.

Finally, exempting IRAs comports with the very policy furthered by exemptions--providing the honest debtor with a fresh start. More specifically, exempting IRAs furthers the policy behind the pension exemption--protecting a debtor's future income stream.[9] And the Code even contains a safeguard to avoid potential abuse when it limits exemption to only such portion of the otherwise exemptible payments that the bankruptcy court deems necessary for the support of the debtor and any of his dependents.

D. CONTROL

We reject out of hand the Trustee's argument that the absence of an anti-alienation provision in the IRA destroys its exemptibility. This argument is grounded first in the fact of

_____

[9]In re Hickenbottom, 143 B.R. 931, 933 (Bankr. W.D. Wash. 1992).

control by the debtor. That the debtor has control over the IRA, penalty notwithstanding, does not destroy its exemptibility. Control is a concept applicable to the determination of whether an asset belongs to the estate, a determination that is made before the question of exemption is ever reached. Once the asset is included in the estate, the concept of control evanesces; control is simply irrelevant to the question of exemption. Indeed, other exempt assets, such as personal residences, remain in the debtor's control following a discharge.

The plain language of the subject section supports the conclusion that control by a debtor does not destroy exemptibility. True, to be exempt, the right to receive a payment under a "similar plan or contract" must be "on account of illness, disability, death, age, or length of service."[10] Yet nowhere do the words "only" or "solely" appear. The language of the subject section does not express a requirement that the right to receive a payment under a "similar plan or contract" be conditioned "only" or "solely" or "exclusively" on one of the five listed events. None dispute that the list is exclusive and mandatory in that (1) the right to receive payment under a "similar plan or contract" must be triggered by at least one of the five events, and (2) the right to receive the payment cannot be either totally unfettered or not triggered by *inter alia* one of the five listed events.

An entirely separate question, however, is whether exemptibility is destroyed if, despite the right to receive the

---

[10]11 U.S.C. §522(d)(10)(E) (1994).

payment being triggered by one or more of the five listed events, such right can be triggered as well by some additional event, occurrence, or status that is not listed.  Simply stated, the Trustee's argument is that the presence of such an additional factor somehow blocks or destroys exemptibility despite the presence of one of the five requisite events.  We disagree:  As long as the right to receive a payment under a plan or contract can be triggered by one or more of the five listed events, and is therefore exemptible, the fact that payments can also be triggered by some additional factor--or absence of some additional factor--cannot destroy exemptibility.  Once one (or more) of the listed events is found to apply, it (or they) need not be the sole prerequisite to all rights to receive payment.  Neither need the listed event (or events) block the right to receive payment under some other situation.

Additionally, the rule of ejusdem generis requires inclusion of IRAs in the phrase "similar plan or contract" by general (if not perfect) analogy to the four specified plans or contracts that are per se exemptible, *with or without an anti-alienation requirement*. Proof of this is found in an important feature of profitsharing plans, one of the foursome of nominate plans or contracts which are per se exemptible under paragraph (d)(10)(E): Profitsharing plans contain provisions that entitle participants to receive payments on account of one or more of the five listed triggering events, but also permit participants to withdraw up to the entire amount upon payment of a penalty.  No philosophical or economic distinction

8

that would preclude an IRA's exemptibility can be drawn between relevant features of profitsharing plans and similar features of IRAs.

In the instant case, Debtor's right to receive a payment from the IRA is statutorily triggered by his attaining age 59-1/2 years; yet surely the additional fact that he may receive payments from the IRA at an earlier age by incurring a 10% penalty tax and furnishing notice to the custodian cannot destroy the IRA's exemptibility. Both events--attaining age 59-1/2 and paying the penalty tax--are statutorily applicable to <u>any</u> IRA, even if by inadvertence the account document should omit those provisions. That here Debtor did not elect to include the purely optional term of anti-alienation is of no significance whatsoever.

E.    PRESENT RIGHT TO RECEIVE

Given the Trustee's obfuscation of the issue by arguing the question of "present payments," it is helpful to recognize the distinction between a debtor's right to receive a payment presently (the Trustee's contention) and a debtor's "right to receive . . . a payment" (the plain words of the section) which includes both (1) a debtor's *presently* vested right to receive a payment *in the future* and (2) a debtor's right to receive a payment "presently," "currently," or "immediately." We decline the Trustee's invitation to read into the subject section of the Code a restriction to the right to receive payments presently, to the exclusion of a present right to receive payments in the future. The language of the section does not include words like "presently," "currently," or

9

"immediately." Indeed, to infer such would be to exclude from consideration *all* deferred compensation and retirement accounts that have not yet ripened to current payment status. Again, that which is exempt is the *right* to receive payments, whether future or present, not merely the current receipt of payments.

F.    To the Extent Reasonably Necessary

The subject section of the Code expressly limits the exempt right to receive payments "to the extent reasonably necessary for the support of the debtor and any dependent of the debtor."[11] Determination of the quantum that is needed for support is entrusted to the sound discretion of the bankruptcy court. The bankruptcy court's authority and obligation to determine the extent to which funds are necessary for the support of the debtor and his dependents work as a safeguard to prevent debtors from stashing away assets in fraud of creditors, thereby ensuring that the proverbial shield cannot be used as a sword.

G.    No Conflict With Precedent in Other Circuits

Our decision to hold this IRA and ones like it exemptible does not create a circuit split, particularly not with the Third Circuit as the Trustee urges. That circuit's decision in <u>In re Clark</u>[12] held that a debtor's Keogh or H.R. 10 retirement plan was not exempt under the subject Code section. But H.R. 10 plans no longer exist. Therefore, the <u>Clark</u> precedent is obsolete, so no actual conflict can be created with that decision. Neither does our decision

---

[11]11 U.S.C. §522(d)(10)(E) (1994).

[12]711 F.2d 21 (3d Cir. 1983).

10

conflict with the Third Circuit's holding in <u>Velis v. Kardanis</u>[13] which deals solely with the "to the extent reasonably necessary" limitation in the context of a debtor who is already more than 59-1/2 years old, and which therefore cannot be read to extend <u>Clark</u> to IRAs.

III.

CONCLUSION

For the foregoing reasons, the district court's decision to affirm the bankruptcy court's grant of Trustee's objection to the exemption is reversed, and judgment is rendered holding Debtor's IRA to be exempt.

REVERSED and RENDERED.

---

[13]949 F.2d 78 (3d Cir. 1991).