**In re Richard Gerald ROUSEY and Betty Jo Rousey, Debtors.**

No. 3:01–BK–13241.

United States Bankruptcy Court, W.D. Arkansas, Harrison Division.

Feb. 13, 2002.

Claude Jones, Harrison, AR, for Richard and Betty Jo Rousey.

Colli C. McKiever, Fayetteville, AR, for trustee Jill R. Jacoway.

Jill R. Jacoway, Fayetteville, AR, trustee.

*Order Sustaining Trustee's Objection
to Exemptions and Granting
Motion for Turnover*

ROBERT F. FUSSELL, Bankruptcy Judge.

Pending before the Court is the "Objection to Claim of Exemptions and Motion for Turnover" filed by Jill Jacoway, the chapter 7 trustee (the "Trustee"), on August 3, 2001. The Court conducted an evidentiary hearing on the objection to exemptions and motion for turnover on October 24, 2001. For the reasons stated below, the Trustee's objection to exemptions is sustained and her motion for turnover is granted.

I. *Jurisdiction.*

This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(B) and (E). The following order constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052(a).

II. *Findings of Fact.*

Richard Gerald Rousey and Betty Jo Rousey ("Debtors") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on April 27, 2001. Debtors' Schedule B, "Personal Property," lists Debtors' interests in two IRAs at the First National Bank in Berryville, Arkansas, specifically, IRA CERT # 208221 in the name of Richard Gerald Rousey, and IRA CERT # 208345 in the name of Betty Jo Rousey (collectively the "IRAs").

On Debtors' Schedule C, "Property Claimed as Exempt," Debtors claimed the following exemptions of the IRAs:

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Market Value of Property Without Deducting Exemption |
|---|---|---|---|
| IRA CERT # 208221 First National Bank, Berryville, AR. | 11 U.S.C. § 522(d)(5)<br>11 U.S.C. § 522(d)(10)(E) | 5,033.00<br>37,882.32 | 42,915.32 |
| IRA CERT # 208345 First National Bank, Berryville, AR | 11 U.S.C. § 522(d)(5)<br>11 U.S.C. § 522(d)(10)(E) | 5,648.00<br>6,470.16 | 12,118.16 |

On August 3, 2001, the Trustee filed an objection to exemptions and motion for turnover, and argued that Debtors are not entitled to claim exemptions of the IRAs pursuant to 11 U.S.C. § 522(d)(10)(E) in the total amount of $44,352.48. The Trustee does not object to Debtors' claimed exemptions in the total amount of $10,681.00 pursuant to 11 U.S.C. § 522(d)(5).

On October 24, 2001, the Court conducted an evidentiary hearing on the Trustee's objection to exemptions and motion for turnover. At the hearing, the parties stipulated to the amounts and account numbers of the IRAs, as set forth above. The Court heard the testimony of Debtors, who each testified that it is their understanding that they can withdraw money from the IRAs at any time, subject to a 10% tax penalty. At the conclusion of the hearing, upon the request of the parties, the Court continued the matter to allow for additional discovery and the introduction of additional evidence as to the extent to which the IRAs are reasonably necessary for the support of Debtors. In addition, the Court informed the parties that it would rule in the interim on the issue of whether Debtors' ability to withdraw money from the IRAs at any time renders 11 U.S.C.

§ 522(d)(10)(E) inapplicable to this case as a matter of law.

On December 21, 2001, the parties filed a joint stipulation, admitting into evidence copies of the IRA custodial account agreements pertaining to the IRAs. The two account agreements are identical, and, with regard to distribution, provide as follows:

1. Notwithstanding any provision of this agreement to the contrary, the distribution of the Depositor's interest in the custodial account shall be made in accordance with the following requirements and shall otherwise comply with section 408(a)(6) and Proposed Regulations section 1.401(a)(9) 2, the provisions of which are incorporated by reference.

2. Unless otherwise elected by the time distributions are required to begin to the Depositor under paragraph 3, or to the surviving spouse under paragraph 4, other than in the case of a life annuity, life expectancies shall be recalculated annually. Such election shall be irrevocable as to the Depositor and the surviving spouse and shall apply to all subsequent years. The life expectancy of a nonspouse beneficiary may not be recalculated.

3. The Depositor's entire interest in the custodial account must be, or begin to be, distributed by the Depositor's required beginning date, (April 1 following the calendar year end in which the Depositor reaches age 70½). By that date, the Depositor may elect, in a manner acceptable to the Custodian, to have the balance in the custodial account distributed in:

(a) A single sum payment.

(b) An annuity contract that provides equal or substantial equal monthly, quarterly, or annual payments over the life of the Depositor.

(c) An annuity contract that provides equal or substantially equal monthly, quarterly, or annual payments over the joint and last survivor lives of the Depositor and his or her designated beneficiary.

(d) Equal or substantially equal annual payments over a specified period that may not be longer than the Depositor's life expectancy.

(e) Equal or substantially equal annual payments over a specified period that may not be longer than the joint life and last survivor expectancy of the Depositor and his or her designated beneficiary.

4. If the Depositor dies before his or her entire interest is distributed to him or her, the entire remaining interest will be distributed as follows:

(a) If the Depositor dies on or after distribution of his or her interest has begun, distribution must continue to be made in accordance with paragraph 3.

(b) If the Depositor dies before distribution of his or her interest has begun, the entire remaining interest will, at the election of the Depositor, or if the Depositor has not so elected, at the election of the beneficiary or beneficiaries, either

(i) Be distributed by the December 31 of the year containing the fifth anniversary of the Depositor's death, or

(ii) Be distributed in equal or substantially equal payments over the life or life expectancy of the designated beneficiary or beneficiaries starting by December 31 of the year following the year of the Depositor's death. If, however, the beneficiary is the Depositor's surviving spouse, then this distribution is not required to begin before December 31 of the year in which the Depositor would have turned 70½.

(c) Except where distribution in the form of an annuity meeting the requirements of section 408(b)(3) and its related regulations has irrevocably commenced, distributions are treated as having begun on the Depositor's required beginning date, even though payments may actually have been made before that date.

(d) If the depositor dies before his or her entire interest has been distributed and if the beneficiary is other than the surviving spouse, no additional case contributions or rollover contributions may be accepted in the account.

Both IRA agreements included an IRA Disclosure Statement, which states the following regarding withdrawals:

10. **Federal Penalties.** In addition to the taxes imposed on IRAs, distributions from IRAs are also potentially subject to a wide variety of penalties (excise taxes).

A. **Penalty for Premature Distribution.** Generally, if you take a distribution from your IRA before you reach the age 59 ½, you will owe, in addition to regular income taxes, a 10% excise tax on the taxable amount of the distribution. Exceptions to the 10% excise tax in the case of disability, death, a first home, qualified higher education expenses, distribution for health care expenses exceeding 7.5% of your adjusted gross income, distributions used to pay for health care insurance if you are unemployed, or if you agree to take a series of substantially equal periodic payments made over your life expectancy or the joint life expectancy of yourself and your designated beneficiary.

Based on the language of the IRA agreements, the Court finds that Debtors have an immediate right to withdraw the funds in the IRAs. The only impediment to the Debtors' right to withdraw is the 10% excise tax penalty referenced in the IRA Disclosure Statement.

III. *Conclusions of Law.*

The Trustee does not dispute that Debtors are entitled to exempt $10,681.00 of the IRAs pursuant to 11 U.S.C. § 522(d)(5). The only issue before the Court is whether Debtors are entitled to exempt the remaining $44,352.48 of the IRAs pursuant to 11 U.S.C. § 522(d)(10)(E), which provides:

(d) The following property may be exempted under subsection (b)(1) of this section:

(10) The debtor's right to receive—

(E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—

(i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;

(ii) such payment is on account of age or length of service; and

(iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), or 408 of the Internal Revenue Code of 1986.

11 U.S.C. § 522(d)(10)(E).

In interpreting § 522(d)(10)(E), the Court is mindful of the familiar principle that "exemption statutes must be construed liberally in favor of the debtor and in light of the purposes of the exemption." *In re Andersen,* 259 B.R. 687, 690 (8th Cir. BAP 2001) (citing *In re Wallerstedt,* 930 F.2d 630, 631 (8th Cir.1991)). However, the liberal construction of exemption statutes is "for the purpose of achieving the

legislative intent, not to 'extend the provisions of the legislative grant.'" *Eilbert v. Pelican (In re Eilbert),* 162 F.3d 523 (8th Cir.1998) (citations omitted). The purpose of exempting the right to payments under a pension, annuity, or similar plan is to "protect payments which function as wage substitutes after retirement." *Id.* The exemption is intended to protect payments that "support basic living requirements during the time of life when earning capacity is limited by age, disability, or illness." *Id.*

The Eighth Circuit Bankruptcy Appellate Panel has crafted a three prong test for the § 522(d)(10)(e) exemption. Specifically, the right to payment is exempt only to the extent the following conditions apply:

> (1) they [the payments] are received pursuant to a "pension, annuity, or similar plan or contract,"
> (2) "on account of illness, disability, death, age or length of service," and
> (3) are reasonably necessary for the debtor's support or for the support of a dependent of the debtor.

*Id.* (citing generally to *Eilbert,* 162 F.3d at 527–28). Pursuant to Federal Rule of Bankruptcy Procedure 4003(c), the Trustee has the burden to demonstrate that the conditions of the exemption are not met. *Id.* If any of the conditions of the exemption are not met, Debtors may not claim the exemption.

A. *Are the payments received pursuant to a pension, annuity, or similar plan or contract?*

The Court must first determine whether the IRAs constitute pensions, annuities, or similar plans or contracts within the meaning of § 522(d)(10)(E). Section 522(d)(10)(E), particularly as applied to IRAs that qualify for tax-exempt status under § 408 of the Internal Revenue Code, has been the subject of much judicial interpretation, and a significant amount of judicial consternation.[1] It seems the number of different judicial interpretations of the § 522(d)(10)(E) exemption is limited only to the number of courts that analyze the issue.

At least four of the circuit courts of appeals have reached the conclusion that "some—if not all—IRAs were intended to be included in the phrase 'similar plan or contract.'" *In re Carmichael,* 100 F.3d 375, 378 (5th Cir.1996); see also *In re Dubroff,* 119 F.3d 75 (2d Cir.1997); *In re McKown,* 203 F.3d 1188 (9th Cir.2000); *In re Brucher,* 243 F.3d 242 (6th Cir.2001). Although each of the four circuits employs a unique analysis of the issue, each of the four opinions contains a common thread— the notion that Congress's mention of Internal Revenue Code § 408 in subparagraph (d)(10)(E)(iii) compels a holding that Congress intended for IRAs to be included in the § 522(d)(10)(E) exemption.

The *Carmichael* court noted that subparagraph (d)(10)(E)(iii) "specifically denies exemption to those 'similar plans or contracts' that come within the proscription of (d)(10)(E)(i) and (d)(10)(E)(ii) and also fail to qualify under ... § 408." *Carmichael,* 100 F.3d at 378. The *Carmichael* court surmised that if IRAs are not "similar plans or contracts," "there would be no exempt § 408 plans or contracts from which ... § 408 plans or contracts could be exceptions." *Id.* The *Carmichael* court also proposed that IRAs should be included in the exemption because they are substitutes for future earnings; to

---

**1.** One court has described the language of § 522(d)(10)(E) as "seemingly irreconcilable" and requiring a navigation between the "'Scylla of rigid construction' and the 'Charybdis of meaninglessness.'" *In re Dale,* 252 B.R. 430, 432 (Bankr.W.D.Mich.2000).

hold otherwise would penalize self-employed individuals who chose to depend on IRAs for retirement; and "exempting IRAs comports with the very policy furthered by exemptions-providing the honest debtor with a fresh start" by "protecting a debtor's future income stream." *Id.*

The *Dubroff* court, interpreting a New York statute materially identical to § 522(d)(10)(E), rejected the proposition that its "initial task in interpreting [the exemption] is to determine whether an IRA is a 'similar plan or contract.'" *Dubroff*, 119 F.3d at 77. The court reasoned that "if [it] were to do so and reach the conclusion that an IRA was not a 'similar plan or contract,' [subparagraph (iii)] would become surplusage." *Id.*

The *McKown* court, citing *Carmichael* and *Dubroff,* posed the rhetorical question "[w]hy would Congress talk about IRAs in the exception unless it included IRAs in the rule?" *McKown*, 203 F.3d at 1190. The court concluded that "[Congress] would not. ... There could be no reason for legislators to exclude non-qualifying IRAs from the exemption, as the exception does, unless they intended that qualifying IRAs could be exempt." *Id.*

The most recent circuit court decision on the issue, *Brucher,* essentially follows the reasoning set forth in *Carmichael.* The *Brucher* court determined that "[i]f IRAs were never to be exempted under § 522(d)(10)(E), the inclusion in subsection (iii) of the reference to section 408 would have been utterly pointless." *Brucher,* 243 F.3d at 243.

Debtor urges the Court to follow the reasoning set forth in *Carmichael, Dubroff, McKown,* and *Brucher,* and hold that Debtor's IRA is a "similar plan or contract" under § 522(d)(10)(E). However, for

the Court to so hold, it would have to ignore considerable Eighth Circuit precedent.

The Eighth Circuit first interpreted the phrase "similar plan or contract" in *Huebner v. Farmers State Bank (In re Huebner)*, 986 F.2d 1222 (8th Cir.1993). In *Huebner,* the issue before the court was whether the debtor could claim an exemption in two flexible premium annuities. Both annuities qualified as IRAs under § 408 of the Internal Revenue Code. *Huebner,* 986 F.2d at 1224. The exemption issue was analyzed under an Iowa statute, as Iowa has opted out of the federal exemption scheme. The Iowa statute at issue was materially similar to § 522(d)(10)(E), allowing debtor to exempt the right to payment under "a pension, annuity, or similar plan or contract on account of illness, disability, death, age or length of service." *Id.* The Eighth Circuit later described the Iowa statute as "nearly identical" to and "borrowed from" § 522(d)(10)(E).[2]

Like the Debtors in this case, the debtor in *Huebner* had "the unfettered discretion to receive payments at any time ... subject only to relatively modest penalties for withdrawals before age 59½." *Id.* The court determined that the debtor's "access to and complete control over the timing of the annuity payments mean[s] that any payments received under the contracts would not be 'on account of' his age." *Id.* Accordingly, the court determined that the IRAs were not "similar plans or contracts." In so holding, the court observed that the debtor "could have invested his savings in retirement annuities that prevented him from withdrawing funds prior to his reaching retirement age, in which event retirement payments under those annuities would have been exempt." *Id.*

---

**2.** The Court recognizes that the Iowa statute lacked the internal reference to § 408 that influenced the holdings in *Carmichael, Dubroff, McKown,* and *Brucher.*

Instead of choosing that option, the debtor "decided to invest in annuities that place virtually no restrictions on his right to withdraw." *Id.* The court found that "[s]uch assets are essentially 'bank savings accounts' with favorable tax treatment." *Id.*

The Eighth Circuit Bankruptcy Appellate Panel (the "B.A.P.") analyzed the "similar plan or contract" language of the Iowa statute in *Eilbert v. Pelican (In re Eilbert)*, 212 B.R. 954 (8th Cir. BAP 1997). The B.A.P. identified four factors a court may use to aid its determination of whether a particular annuity is a "similar plan or contract." First, a court may consider whether the debtor made contributions to the annuity over time. *Id.* at 958–59. Second, a court may consider whether the investment was purchased in isolation, or whether it included contributions by others. *Id.* at 959. Third, a court may look to the debtor's return on an investment. *Id.* Finally, a court may consider the extent to which the debtor may control the annuity. The court held that "if the debtor has complete discretion to withdraw the entire corpus, then the contract resembles a non-exempt investment." *Id.* The final factor was apparently conclusive to the B.A.P. Because the debtor "enjoyed unfettered discretion to liquidate the corpus at any time, subject only to contractual penalties assessed against principal," the B.A.P. determined that the annuity was not a "similar plan or contract." *Id.* at 959–60. In addition, the B.A.P. stated that "[a] contractual or tax penalty is not necessarily a limitation on withdrawal." *Id.* at 959.

The B.A.P. decision was affirmed by the Eighth Circuit. *Eilbert v. Pelican (In re Eilbert)*, 162 F.3d 523 (8th Cir.1998). In affirming the B.A.P.'s decision, the court stated that "similar plan or contract" includes within the exemption "retirement plans or investments that are 'created to fill or supplement a wage or salary void.'" *Eilbert*, 162 F.3d at 527. Because the debtor's annuity did not replace lost income, was not purchased with contributions over time as part of a long term retirement strategy, and was purchased as a pre-bankruptcy planning measure, the court determined that the annuity was not a "similar plan or contract" included within the exemption. *Id.*

The B.A.P. recently re-visited the "similar plan or contract" issue in *Andersen v. Ries (In re Andersen)*, 259 B.R. 687 (8th Cir. BAP 2001). In *Andersen,* the debtor used a $40,000.00 inheritance to purchase an annuity in lieu of a retirement plan. *Andersen,* 259 B.R. at 689. Before reaching retirement age, and before filing bankruptcy, the debtor made the required election on the annuity to state the date on which she would begin receiving payments. *Id.* Upon making the election, the debtor lost the discretion to withdraw, settle, or surrender the corpus of the annuity. *Id.* At the time she filed bankruptcy, the debtor was retired and receiving monthly annuity payments. *Id.*

In *Andersen,* the B.A.P. looked to the analysis performed in *Eilbert,* and stated that "numerous factors may be considered" in determining whether an annuity is a "similar plan or contract." As in *Eilbert,* the B.A.P. stated that specific queries may include:

\* Were the payments designed or intended to be a wage substitute?

\* Were the contributions made over time? The longer the period of investment, the more likely the investment falls within the ambit of the statute and is the result of a long standing retirement strategy, not merely a recent change in the nature of the asset.

\* Do multiple contributors exist? Investments purchased in isolation, outside

the context of workplace contributions, may be less likely to qualify as exempt.

\* What is the return on investment? An investment which returns only the initial contribution with earned interest or income is more likely to be a nonexempt investment. In contrast, investments which compute payments based upon the participant's estimated life span, but which terminate upon the participant's death or the actual life span, are akin to a retirement investment plan. That is, will the debtor enjoy a windfall if she outlives her life expectancy? Is she penalized if she dies prematurely?

\* What control may the debtor exercise over the asset? If the debtor has discretion to withdraw from the corpus, then the contract most closely resembles a nonexempt investment.

> FN1. This was the obstacle that the debtor in *Huebner v. Farmers State Bank (In re Huebner)*, 986 F.2d 1222 (8th Cir.), *cert. denied*, 510 U.S. 900, 114 S.Ct. 272, 126 L.Ed.2d 223 (1993) could not overcome.

*Andersen*, 259 B.R. at 691.

 The Eighth Circuit's analysis of the "similar plan or contract" issue stands in stark contrast to the *Carmichael, Dubroff, McKown,* and *Brucher* holdings, each of which suggests that IRAs fall within the "similar plan or contract" language *per se.* This Court is bound to follow the precedent of the Eighth Circuit.[3] More-

over, this Court is convinced that the Eighth Circuit analysis is the better rule of law.

The rule adopted in *Carmichael, Dubroff, McKown,* and *Brucher* (the "Per Se Exemption") requires leaps of statutory construction that this Court is not willing to make. The courts that have adopted the Per Se Exemption argue that holding otherwise would render the mention of § 408 in subparagraph (d)(10)(E)(iii) of § 522 surplusage. However, this Court believes that adopting a Per Se Exemption of IRAs would render the "similar plan or contract" language of paragraph (d)(10)(E) surplusage in cases involving IRAs.[4]

This Court, like another court that researched the issue, "cannot find anything within the Bankruptcy Code or the legislative history which manifests a Congressional intent to exempt retirement plans in toto." *In re Dale*, 252 B.R. 430, 434 (Bankr.W.D.Mich.2000). In fact, the evidence is quite to the contrary. If Congress intended to enact a Per Se Exemption of § 408 IRAs, it could have done so by simply stating that "a right to receive payment from an individual retirement annuity qualified for tax exempt status under 26 U.S.C. § 408 shall be exempt." In the absence of such a specific enactment, the Court refuses to infer that Congress manifested any such intent by mentioning

---

**3.** None of the Eighth Circuit cases cited herein involve both the federal § 522(d)(10)(E) exemption and a § 408 IRA. Nonetheless, the Court finds no indication in the Eighth Circuit opinions that the court would forego its analysis of the "similar plan or contract" requirement merely because subparagraph (iii) of § 522(d)(10)(E) mentions § 408.

**4.** Moreover, the Court perceives an inconsistency in the manner the *Carmichael* court applied the Per Se Exemption. Specifically, the *Carmichael* court dispensed of the "simi-

lar plan or contract" and "on account of illness, disability, death, age, or length of service" requirements of paragraph (d)(10)(E), but nonetheless imposed the "reasonable necessary for the support of the debtor and any dependent of the debtor" requirement of (d)(10)(E). If the *Carmichael* court determined that (d)(10)(E)(iii) requires the exemption of IRAs *per se,* then all IRAs, even those not reasonably necessary for support, should be exempt. The Court does not believe that Congress intended such a result.

§ 408 in subparagraph (iii) of § 522(d)(10)(E).

Statutory provisions, such as subparagraph (d)(10)(E)(iii), must be construed *in pari materia*, that is, in reference to one another. *In re Zott*, 225 B.R. 160, 167 (Bankr.E.D.Mich.1998). Statutory language must be evaluated in context, and the Supreme Court has observed that the plain meaning a court should attempt to discern is the plain meaning of the whole statute, not of isolated sentences. *Beecham v. United States*, 511 U.S. 368, 372, 114 S.Ct. 1669, 128 L.Ed.2d 383 (1994). Courts should avoid interpretations that render statutory terms as surplusage. *Babbitt v. Sweet Home Chapter of Communities for a Great Or.*, 515 U.S. 687, 698, 115 S.Ct. 2407, 132 L.Ed.2d 597 (1995). If at all possible, courts should strive to read the provisions of a statute as harmonious with each other.

The Court concludes that the most harmonious interpretation of § 522(d)(10)(E) is that Congress intended to exempt § 408 IRAs to the extent they are "similar plans or contracts"; payable "on account of illness, disability, death, age or length of service"; and "reasonably necessary for the support of the debtor and any dependent of the debtor." This interpretation gives meaning to the requirements of paragraph (d)(10)(E), without ignoring the mention of § 408 in subparagraph

(d)(10)(iii). Under this interpretation, no part of the statute is surplusage.[5]

Based on the Eighth Circuit's decision in *Huebner*, the Court concludes that the IRAs in this case are not "similar plans or contracts." In *Huebner*, the Eighth Circuit specifically held that an IRA is not a "similar plan or contract" where the debtor has unfettered discretion to withdraw from the corpus. *Huebner*, 986 F.2d 1222.

In this case, both Debtors' testimony and the language of the IRA agreements establish that Debtors may withdraw from the corpora of the IRAs at any time, subject only to a 10% excise tax penalty. The Court concludes that Debtors' IRAs are not "similar plans or contracts" within the meaning of § 522(d)(10)(E).

B. *Are the payments on account of illness, disability, death, age, or length of service?*

■ The Court's conclusion that the IRAs are not "similar plans or contracts" is sufficient to sustain the Trustee's objections to exemptions and grant the Trustee's motion for turnover. However, because the Court has heard evidence as to whether the right to payment under Debtors' IRAs are triggered by illness, disability, death, age or length of service, the Court will also issue findings on that issue.[6] The Eighth Circuit has held that in

---

**5.** One might argue that this interpretation renders IRAs, as they exist today, non-exemptible *de facto* because IRAs are standardized agreements, allowing for preset payment with a tax penalty imposed for withdrawal before age 59½. Therefore, it may be that few, if any, IRAs meet the "on account of" requirement. In fact, one court has held that IRAs, as they exist today, are non-exempt *per se* under § 522(d)(10)(E). *In re Zott*, 225 B.R. at 168. However, this Court finds no reason why IRAs that meet the "on account of" requirement cannot be drafted. There is nothing in the Internal Revenue Code or tax regulations to prevent a person from including a spend-

thrift provision in his IRA contract that takes away discretion to access the corpus of the account. *Id.* If, as the *Zott* court believed, it is "unlikely" that individuals would insist on such a provision, and if Congress determines that all IRAs should be exempt, then Congress should amend § 522 to exempt all IRAs. The Court must assiduously avoid the temptation to "fix" statutes. *In re Widdicombe*, 269 B.R. 803, 807 (Bankr.W.D.Ark.2001).

**6.** Other Courts have disregarded this requirement with regard to § 408 IRAs. See *Brucher*, 243 F.3d at 244. For the reasons set forth previously in this opinion, this Court will ad-

order for an annuity to qualify for the exemption, "the debtor may not have access to or control over the timing of the annuity payments." *Huebner,* 986 F.2d at 1225; see also *Eilbert,* 162 F.3d at 527; *Andersen,* 259 B.R. at 693. Access to and control over the timing of annuity payments mean that any payments received are not "on account of age." *Id.* The ten percent federal tax penalty imposed on early withdrawals from a § 408 IRA has been described by the Eighth Circuit as "relatively modest," and does not constitute a restriction on the right to withdraw. *Id.*

In this case, the testimony of Debtors and the language of the IRA agreements establish that Debtors may withdraw from the IRAs at any time. Therefore, Debtors' right to payment under the IRAs is not on account of illness, disability, death, age, or length of service, and Debtors right to payment under the IRAs is not entitled to an exemption under § 522(d)(10)(E).

IV. *Conclusion.*

The IRAs do not meet the first two requirements of § 522(d)(10)(E). Accordingly, Debtors are not entitled to claim exemptions pursuant to that section. The Trustee's objection to exemptions and objections to amended exemptions are hereby SUSTAINED and the Trustee's motion for turnover is hereby GRANTED, provided that Debtors are entitled to their "wildcard exemption" in the total amount of $10,681.00 pursuant to 11 U.S.C. § 522(d)(5).

IT IS SO ORDERED.

here to Eighth Circuit precedent and give meaning to all of the requirements of § 522(d)(10)(E).