

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-19-2008

# In Re: Susan Krebs

Precedential or Non-Precedential: Precedential

Docket No. 06-2959

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"In Re: Susan Krebs " (2008). *2008 Decisions*. Paper 1092.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1092

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-2959

———

IN RE:  SUSAN MARIE KREBS,

Appellant

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 06-cv-00066E)
District Judge:  Honorable Sean J. McLaughlin

———

Argued March 6, 2008
Before:  FISHER, GREENBERG and ROTH, *Circuit Judges*.

(Filed: May 19, 2008)

J. Wesley Rowden (Argued)
310 Chestnut Street
Masonic Building, Suite 225
Meadville, PA  16335
        *Attorney for Appellant*

Gary V. Skiba (Argued)
Yochim, Skiba, Johnson, Cauley & Nash
345 West 6th Street
Erie, PA  16507
        *Attorney for Appellee*

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

        This appeal requires us to revisit one of our precedents in deciding whether a debtor's right to receive payment from an individual retirement account (IRA) may be exempt from the bankruptcy estate under 11 U.S.C. § 522(d)(10)(E), even though the debtor has not yet reached retirement age.  For the reasons that follow, we hold that an intervening Supreme Court decision impliedly overrules our own earlier precedent.  Accordingly, we will vacate the order of the District Court relying on that precedent and remand.

**I.**

        Susan Marie Krebs filed a voluntary petition for bankruptcy on September 7, 2005, when she was 58 years of age.  After the meeting of creditors, Gary V. Skiba, appellee herein, was designated as the Chapter 7 trustee, or the person responsible for overseeing the liquidation of the bankruptcy estate and the distribution of the proceeds.  Krebs indicated on

2

her bankruptcy schedules that she had an IRA worth $43,571.96 at Lincoln Financial Group. She also sought to exempt the IRA under 11 U.S.C. § 522(d)(10)(E). On December 12, 2005, Skiba filed an objection to the exemption in the United States Bankruptcy Court for the Western District of Pennsylvania.

After a hearing, the Bankruptcy Court by order dated March 3, 2006 sustained Skiba's objection. Krebs timely appealed that order to the District Court. By memorandum opinion and order dated May 10, 2006, the District Court affirmed, relying on precedent disallowing exemptions of amounts in retirement plans under § 522(d)(10)(E) unless the debtor is presently receiving those amounts without penalty, i.e., typically after the debtor has reached retirement age. Krebs then filed a timely notice of appeal to this Court.[1]

## II.

The District Court had jurisdiction under 28 U.S.C. § 158(a). We have jurisdiction under 28 U.S.C. § 158(d) and exercise plenary review over conclusions of law. *In re Brannon*, 476 F.3d 170, 173 (3d Cir. 2007). A panel of this Court may reevaluate the holding of a prior panel which conflicts with intervening Supreme Court precedent. *See Mennen Co. v. Atl. Mut. Ins. Co.*, 147 F.3d 287, 294 n.9 (3d Cir. 1998); *Reich v. D.M. Sabia Co.*, 90 F.3d 854, 858 (3d Cir. 1996).

---

[1]Krebs does not appeal, so we do not address, the District Court's other holding that her IRA is not excluded under 11 U.S.C. § 541(c)(2).

# III.

## A. Our Decision in *Clark*

> "As a general matter, upon the filing of a petition for bankruptcy, 'all legal or equitable interests of the debtor in property' become the property of the bankruptcy estate and will be distributed to the debtor's creditors. [11 U.S.C.] § 541(a)(1). To help the debtor obtain a fresh start, the Bankruptcy Code permits him to withdraw from the estate certain interests in property, such as his car or home, up to certain values. *See*, *e.g.*, § 522(d)."

*Rousey v. Jacoway*, 544 U.S. 320, 325 (2005). In this case, Krebs claims that her right to receive payment from the IRA is exempt under § 522(d)(10)(E).[2]

Krebs must establish three requirements for exemption:

---

[2]Subsequent to the *Rousey* decision, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 224, 119 Stat. 23, 64 (2005), one of whose provisions unambiguously exempts qualifying IRA funds with respect to bankruptcy petitions filed after October 17, 2005. *Id.* § 224(a)(2)(B). This new provision, now codified at 11 U.S.C. § 522(d)(12), does not apply here, however, because Krebs filed her bankruptcy petition on September 7, 2005, one month before the new provision's effective date. Thus, we (as well as Krebs) may rely only on § 522(d)(10)(E).

(1)      the right to receive payment must be "under a stock bonus, pension, profitsharing, annuity, or similar plan or contract";

(2)      the right to receive payment must be "on account of illness, disability, death, age, or length of service"; and

(3)      the right to receive payment may be exempted only "to the extent reasonably necessary for the support of the debtor and any dependent of the debtor."

11 U.S.C. § 522(d)(10)(E) (with one exception not relevant here).[3]

We interpreted the third requirement in *In re Clark* (*Clark v. O'Neill*), 711 F.2d 21 (3d Cir. 1983). In *Clark*, Robert H. Clark, a 43-year-old family therapist, filed a Chapter 7 petition in bankruptcy and claimed an exemption for the $17,466 in his Keogh retirement plan. *Id.* at 22. Contributions

---

[3]The parties have not argued, so we do not decide, that there is a difference between exempting the right to receive payment from an IRA versus exempting the IRA itself. The Supreme Court does not appear to perceive any difference of significance. *Compare Rousey*, 544 U.S. at 325 ("the right to receive payment may be exempted"), *with id.* at 326 ("IRAs can be exempted"). Hence, we, too, will assume the semantic interchangeability and refer to exempting both in this opinion.

to such a plan are tax-deductible, and income tax on its earnings is deferred until withdrawn. The right to receive payment under the plan is triggered when a participant turns 59 ½, dies, or is disabled. *Id.* If a participant receives a payment before one of these events, he must pay a penalty tax of 10% in addition to regular income taxes. *Id.*

The trustee in *Clark* filed an objection to the claimed exemption, and Clark filed a complaint against the trustee seeking a denial of the objection. In interpreting § 522(d)(10)(E), the bankruptcy court agreed with the trustee that because Clark had no present right to receive payments from the plan, his exemption claim did not fall within the literal terms of the statutory provision. *Id.*

We affirmed. We first cited the following legislative history of the exemption provisions of the Bankruptcy Code:

> "The historical purpose of [] exemption laws has been to protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all of his nonexempt property, the debtor will not be left destitute and a public charge. [This] purpose has not changed."

*Id.* at 23 (quoting H.R. Rep. No. 95-595, at 126 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6087). Based on that legislative history, we held: "The exemption of present Keogh payments, to the extent they are necessary for the support of the debtor, is consistent with this goal. The exemption of *future*

6

payments, however, demonstrates a concern for the debtor's long-term security which is absent from the statute." *Id.*[4]

We proceeded to cite decisions from various bankruptcy courts (we did not cite a single circuit or district court decision) that showed that "[t]he result of denying the exemption with respect to future payments is in accord with the caselaw." *Id.* After explaining that some of the cases were decided on other grounds, we were left essentially with one decision on point, *Matter of Kochell*, 26 B.R. 86 (Bankr. W.D. Wis. 1982), which we characterized as "agree[ing] that the underlying purpose of the section was to alleviate present rather than long-term need, a condition which the 44-year old debtor, a doctor in apparent good health, could not demonstrate." 711 F.2d at 23.[5] Beyond

---

[4]We apparently failed to quote the rest of the paragraph in the House Report, which evinced an intent to make bankruptcy exemptions more generous, not less. We also made no mention of a later portion of that same report, which explained that § 522(d)(10) "exempts certain benefits that are akin to future earnings of the debtor." H.R. Rep. No. 95-595, at 362 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6318.

[5]In *Kochell* the bankruptcy court actually conducted an intensive factual inquiry into the debtor's finances and found that the "presence of [a] surplus [beyond his current living expenses] indicates not only that the pension fund is not necessary for the current support of the debtor, but that a pension fund could be easily reestablished." 26 B.R. at 87. It is quite a stretch to turn a finding of current surplus on the facts into a per se rule precluding exemption of all future retirement

the aforementioned legislative history and the *Kochell* case, our opinion in *Clark* did not contain further reasoning to support our per se rule that only present payments from a retirement fund can ever meet the "reasonably necessary" requirement.

Judge Becker concurred in the judgment only. He specifically took exception to the majority's holding distinguishing between future payments and present payments, "for the distinction required by the majority's reasoning effectively penalizes self-employed individuals for the form in which their retirement assets are held." 711 F.2d at 23 (Becker, J., concurring). He explained that retirement plans created by employers are not affected by the majority's holding because the assets of such plans are not included in the debtor's estate in the first place. *Id.* at 24. He also wrote that he would not rely on the legislative history relied upon by the majority, "given the incongruity of the result for different retirement plans." *Id.*

## B. The Impact of *Rousey*

Several of our sister courts of appeals have decided the exemption issue contrary to *Clark*.[6] However, we lack authority to overrule it on that basis. Nor can we overrule it because we are no longer persuaded by its reasoning. The basis that permits

plan payments.

[6]*See, e.g., In re Brucher*, 243 F.3d 242, 243 (6th Cir. 2001); *In re McKown*, 203 F.3d 1188, 1190 (9th Cir. 2000); *In re Dubroff*, 119 F.3d 75, 78 (2d Cir. 1997); *In re Carmichael*, 100 F.3d 375, 380 (5th Cir. 1996).

8

us to do so is the Supreme Court's 2005 decision in *Rousey*, in which the Court held that the right to receive IRA payments "can be exempted from the bankruptcy estate pursuant to § 522(d)(10)(E)." 544 U.S. at 326. In *Rousey*, petitioners Richard and Betty Jo Rousey sought to exempt their two IRAs, one in each of their names, from the bankruptcy estate pursuant to that provision. The *Rousey* bankruptcy court and bankruptcy appellate panel denied the Rouseys' exemption claim.

The Court of Appeals for the Eighth Circuit affirmed, relying on its prior holding that IRAs do not satisfy either of the first two requirements of § 522(d)(10)(E), i.e., that they must be similar plans or contracts to those enumerated and that the right to receive payment must be on account of age. *See id.* at 324. In reversing the Eighth Circuit, the Supreme Court held that the Rouseys' IRAs satisfied both statutory requirements. *Id.* at 334-35.

The IRAs at issue here and in *Rousey* (both of which fall undisputedly within the meaning of section 408 of the Internal Revenue Code, 26 U.S.C. § 408) share many of the characteristics of the Keogh plan at issue in *Clark*. First, IRAs provide for tax-deductible contributions. 26 U.S.C. §§ 219(a) & 408(e)(1). Taxation is deferred until amounts are withdrawn. *Rousey*, 544 U.S. at 323, 331-32. Withdrawals made before the accountholder turns 59 ½ are generally subject to a 10% tax penalty. *See* 26 U.S.C. § 72(t). The Supreme Court concluded that "these features show that IRA income substitutes for wages lost upon retirement and distinguish IRAs from typical savings accounts." 544 U.S. at 332.

9

Although the precise holding in *Rousey* covers only the first and second requirements of § 522(d)(10)(E), the facts in *Rousey* cast doubt on *Clark*'s interpretation of the third requirement. That interpretation, i.e., the per se rule we established, is wrong because the Rouseys had not yet reached 59 ½ years of age when they filed their bankruptcy petition, so they were not yet receiving payments (without penalty) from the IRA they sought to exempt. The pertinent part of the Rouseys' merits brief before the Supreme Court states:

> "When they filed for bankruptcy, Richard Rousey was fifty-seven years old and petitioner Betty Jo Rousey was fifty-three. Their ability to replace those funds, a substantial part of which had been accumulated through their employer-sponsored pension plan, and through the compounding of funds held for many years, is non-existent. Nothing in the language, structure, or purpose of Section 522(d)(10)(E) suggests any reason why the fortuity that they filed for bankruptcy in 2001 rather than the year in which they would be 59 ½ years old should determine the eligibility of their IRAs for exemption."

Brief for Petitioners, *Rousey*, 2004 WL 1900505, at \*35-36; *see also Rousey v. Jacoway*, 275 B.R. 307, 309, 311 (Bankr. W.D. Ark. 2002) (stating that the Rouseys would face a 10% tax penalty if they withdrew from their IRAs at that time). Moreover, it is the Rouseys' age at time of petition filing that matters because the bankruptcy estate is created at the "commencement" of the bankruptcy case. *See* 11 U.S.C. §§ 301

10

& 541(a). The Supreme Court's holding that IRAs may be exempted under § 522(d)(10)(E) therefore applies squarely to those debtors who have not yet reached 59 ½ years of age. Our contrary interpretation of the third requirement of § 522(d)(10)(E) in *Clark* thus ends up appending a sort of fourth requirement that finds no support in the statutory text and that *Rousey* forecloses by its facts.

Although the district and bankruptcy courts in our Circuit have split with respect to *Rousey*'s effect on *Clark*, we are persuaded by the reasoning of those courts that have decided the question the way we do today. For example, the United States District Court for the Middle District of Pennsylvania correctly identified the polar opposite approaches to statutory interpretation in *Rousey* and *Clark*. *See In re Wiggins*, 341 B.R. 506, 512 (M.D. Pa. 2006). Whereas *Clark* narrowed allowable exemptions based on what the majority perceived as the Bankruptcy Code's limited purpose of maintaining the debtor's immediate financial security, *Rousey* focused only on the Code's plain language, which asks whether an item sought to be exempted is "similar" to "a stock bonus, pension, profitsharing, [or] annuity," that is, whether the item provides income that substitutes for wages. *Id.* Other than the three requirements imposed by the plain language, "[n]o other limitation is imposed, and no higher purpose of the Bankruptcy Code is invoked." *Id.* The Supreme Court did not treat as dispositive the factor essential to our per se rule: whether the plan or contract provides for immediate payments or deferred payments. We agree with *Wiggins* that *Rousey*'s approach to construing § 522(d)(10)(E) diverges significantly from our approach in *Clark*, which further undermines *Clark*'s per se rule.

11

Finally, we are unable to determine whether Krebs' right to receive payment from the IRA in fact meets the third requirement of § 522(d)(10)(E) without the now-overruled *Clark* gloss, as neither the District Court nor the Bankruptcy Court engaged in the factual inquiry necessary to determine whether an IRA is "reasonably necessary" to support a debtor and her dependents. *See*, *e.g.*, *In re Booth*, 331 B.R. 233, 236-37 (Bankr. W.D. Pa. 2005) (enumerating eleven factors to consider for the factual inquiry); *In re Bogart*, 157 B.R. 345, 347 (Bankr. N.D. Ohio 1993). Nor does the record indicate whether the entire amount of $43,571.96 may be "reasonably necessary," or only a portion thereof. Because the "to the extent" language in the third requirement of § 522(d)(10)(E) may limit the amount actually exempted in any particular case, it is possible that only some portion of the IRA should be exempted. *See*, *e.g.*, *In re Fulton*, 240 B.R. 854, 870, 876-77 (Bankr. W.D. Pa. 1999). Accordingly, we will remand.

## IV.

Our conclusions are as follows. It is undisputed that Krebs' IRA meets the first two requirements of 11 U.S.C. § 522(d)(10)(E). Further, *Rousey* impliedly overrules *Clark*, so Krebs' right to receive payment from her IRA may be exempt from the bankruptcy estate under § 522(d)(10)(E) even though she has not yet reached 59 ½ years of age. Accordingly, we will vacate the order of the District Court and remand for consideration – without *Clark* posing any obstacle – of whether Krebs establishes the third requirement of § 522(d)(10)(E), that is, whether and to what extent her right to receive payment

12

under the IRA is reasonably necessary to support her and her dependents.